UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LIFETOUCH NATIONAL SCHOOL
STUDIOS, LLC

Plaintiff,

v.

WALSWORTH PUBLISHING COMPANY,
INC. d/b/a WALSWORTH YEARBOOKS,
DEBRA COHEN, RISA NITKIN, SUSAN
GILLAM, and ALEXANDER WILSON,

Defendants.

## DECLARATION OF CRAIG BROWN
## IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING
## ORDER AND MOTION FOR PRELIMINARY INJUNCTION

I, Craig Brown, make this declaration pursuant to 28 U.S.C. § 1746. I hereby state as follows:

1.      I have been a Territory Manager for Lifetouch National School Studios, LLC f/k/a Lifetouch National School Studios Inc. ("Lifetouch"), a yearbook publishing and photography company, since 1998. My responsibilities including, among other things, supervising Sales Managers within my designated territory, which encompasses Rhode Island, Connecticut, and Massachusetts, among other areas. Timothy Rosa, Sales Manager, reports directly to me. Sales Managers, in turn, supervise Sales Representatives. Mr. Rosa supervised Risa Nitkin ("Nitkin") until she resigned from Lifetouch on or about September 30, 2019, and Debra Cohen ("Cohen") until she resigned from Lifetouch on or about October 2, 2019. The facts set forth herein are true

1

to the best of my knowledge, recollection, and review of Lifetouch's business records, and I could and would competently testify to such facts if called as a witness.

2.      For more than 70 years, Lifetouch has been in the business of providing school yearbook publishing services (including yearbook design and sales) to schools throughout the United States, including in the States of Connecticut and Rhode Island.

3.      Lifetouch employed Cohen and Nitkin to develop business relationships with school administrators and officials in these states, so that such decision makers would enter into contracts with Lifetouch to provide school yearbook services to the schools.

4.      The Lifetouch business model is to provide cost-competitive and high quality school yearbook design services, as well as responsive, timely attention to school administrators, so that Lifetouch will be hired, year after year, to provide its services to its customers. This repeat business is the lifeblood of Lifetouch's business.

5.      Walsworth Publishing Company, Inc. ("Walsworth") is also in the business of yearbook preparation and sales. Lifetouch and Walsworth are direct competitors who compete for customers in the same markets and territories.

6.      Over many years of effort and at great expense, Lifetouch has developed, accumulated, maintained, and refined trade secrets and other confidential information, including, among other things, sales leads, customer lists (including customers' identities, key customer contacts, and contact information), customer-specific information (including preferences, needs, costs, profits, purchasing histories, operating procedures, and detailed customer call notes), terms and conditions of historical and current customer agreements (including pricing, minimum quantities, contract expiration dates, and termination and opt-out provisions), training, policies, markets, suppliers, product plans, and marketing plans or strategies, financial reports and

2

projections, production methods, and other business information (collectively, the "Lifetouch Proprietary Information"). Lifetouch has relied on and used the Lifetouch Proprietary Information to assist it to sell its products and services for the entire time that I have been Territory Manager.

7.      The Lifetouch Proprietary Information has provided Lifetouch a significant competitive and economic edge over its competitors, including Walsworth, which did not know or use the information. If armed with the Lifetouch Proprietary Information, Lifetouch's competitors could unfairly identify, contact, and undersell to Lifetouch's customers.

8.      Lifetouch Proprietary Information was not, and is not, generally known to the public. Lifetouch has taken numerous steps to safeguard and limit access to such information. For example, Lifetouch requires all of its sales employees and sales managers to sign employment agreements containing confidentiality and non-solicitation covenants. Lifetouch limited access to the Lifetouch Proprietary Information, even among its staff, by allowing sales personnel to view only overall sales levels and renewal percentages, and restricting access to contract details and account specifications to the individual Sales Representative responsible for the account.   In addition, Lifetouch maintains several policies in its Employee Handbook that safeguard and limit access to the Lifetouch Proprietary Information.  (True and accurate copies of the excerpts of Lifetouch's Employee Handbook referenced in the subparts below are attached hereto as Exhibit 1.) Lifetouch's Employee Handbook includes the following policies:

a. Lifetouch requires the confidential treatment and protection of the Lifetouch Proprietary Information in its Electronic Communications and Systems Policy.

b. The "Separation from Employment" policy in the Employee Handbook requires employees to return all Lifetouch Property, including Lifetouch Proprietary Information, to Lifetouch upon separation from employment.

3

4834-9063-8507.2

c. The "Proprietary and Personal Information" policy in the Employee Handbook states that Lifetouch has made significant investments to create, compile, and develop the Lifetouch Proprietary Information, which has independent, economic value to Lifetouch because it is not generally known to the public and must be protected and kept confidential. This policy requires employees to keep all Lifetouch Proprietary Information "in the strictest confidence and not directly or indirectly disclosure it, make it available to any other person or entity, or use it for personal benefit. This policy further provides: "If employment with Lifetouch ends for any reason, employees must continue to treat as private and confidential any and all Lifetouch Proprietary … Information that became known to them as a result of their employment. Proprietary and Personal Information may not be used, divulged or communicated to any person or entity, unless required by law, without the express written approval of a Lifetouch officer. Lifetouch may pursue legal remedies for the unauthorized use or disclosures of Proprietary … Information."

9. Lifetouch's business also depends heavily on its strong customer relationships. These strong relationships allowed Lifetouch to maintain and grow existing customer accounts, obtain new accounts, and otherwise effectively compete with its competitors, including Walsworth. Lifetouch invested substantial time and money in developing its customer relationships and goodwill. For example, Lifetouch hosted customer events (such as, for example, customer-specific design sessions, trainings, and recognition events), contributed to customers' charitable endeavors, and worked hard to provide excellent customer service. Lifetouch has developed and cultivated its customer relationships over the course of years.

**The Forensic Examination**

10. Following Nitkin's and Cohen's respective resignations from employment,

4

Lifetouch requested that they return their Lifetouch-provided laptop computers, which they did. Thereafter, Nitkin and Cohen returned their Lifetouch-provided laptop computers, which Lifetouch submitted to a third-party vendor to conduct a forensic examination.

11.     The third party forensic examination company provided a spreadsheet containing a list of 973 computer files that were copied from Nitkin's Lifetouch-provided laptop computer on Saturday, September 28, 2019. This list consisted of, among other things, various agreements between Lifetouch and its customers, proprietary presentations and budget worksheets for Lifetouch's use with its customers, customer invoices, order forms, proprietary pricing tools, and bid notifications. These computer files contain Lifetouch Proprietary Information.

12.     The third party forensic examination company provided a spreadsheet containing a list of 7 computer files that were copied from Cohen's Lifetouch-provided laptop computer on October 1, 2019, and 125 computer files that were copied from Cohen's Lifetouch-provided laptop computer on October 3, 2019. This list consisted of, among other things, various agreements between Lifetouch and its customers, proprietary presentations and budget worksheets for Lifetouch's use with its customers, customer invoices, order forms, proprietary pricing tools, and bid notifications. These computer files contain Lifetouch Proprietary Information.

13.     The third party forensic examination company provided several chats in which Cohen used an iPhone application called "WhatsApp" to discuss solicitations of Lifetouch's customers (the "WhatsApp Chats"), which I reviewed.

14.     Lifetouch received the results of the forensic examination of the Lifetouch Computer on or about October 22, 2019. I have reviewed several spreadsheets and WhatsApp Chats that were produced to Lifetouch by the third party forensic examination company based on its forensic examination. Before it received and reviewed the results of the forensic examination,

4834-9063-8507 2

Lifetouch was unaware of Walsworth's involvement and the extent of Nitkin's and Cohen's unlawful conduct.

### Nitkin's and Cohen's Employment with Lifetouch

15.     From in or about 2004 to 2008, Nitkin worked for Lifetouch Publishing Inc., serving as a sales representative.  From 2008 until her resignation on September 30, 2019, Nitkin was an employee of Lifetouch National School Studios Inc., serving as a Sales Representative.  On or about June 25, 2008, Nitkin executed a Sales Representative Employment Agreement at the same time she was hired by Lifetouch.  A true and accurate copy of the Sales Representative Employment Agreement executed by Nitkin is attached hereto as Exhibit 2.

16.     From 2010 until her resignation on October 2, 2019, Cohen was an employee of Lifetouch, serving as a Sales Representative.  On or about July 16, 2010, Cohen executed a Sales Representative Employment Agreement at the same time she was hired by Lifetouch.  A true and accurate copy of the Sales Representative Employment Agreement executed by Cohen is attached hereto as Exhibit 3.

17.     As Sales Representatives for Lifetouch for 11 and 9 years, respectively, Nitkin and Cohen were responsible for selling Lifetouch products and services, including school yearbooks. Nitkin and Cohen called upon schools and other organizations to initiate new business and to obtain orders for repeat business from existing Lifetouch customers.

18.     Lifetouch paid Nitkin and Cohen substantial salaries and commissions to develop good working relationships with its customers so that the customers were satisfied with Lifetouch's products and services, and would be inclined to provide Lifetouch with repeat business.  Lifetouch paid Nitkin and Cohen each over $200,000 per year in the last two years of their employment.

19.     Sales and service of Lifetouch's products is truly a relationship business.  Nitkin

and Cohen were the faces of Lifetouch to the customers whom they called upon on behalf of Lifetouch.

20.      Lifetouch Sales Representatives use mobile devices to conduct Lifetouch business in a variety of ways, including, among other things, email, photographs, storage of customer contacts, and storage of other detailed information concerning customers.  Oftentimes, such information constitutes and contains Lifetouch Proprietary Information.  Nitken and Cohen used their personal phones for work-related purposes at Lifetouch's expense.  Upon information and belief, Nitkin and Cohen have accumulated a substantial amount of Lifetouch Proprietary Information on their personal cell phones.

21.      As Lifetouch Sales Professionals, Lifetouch provided Cohen and Nitkin with relevant Lifetouch Proprietary Information so that they could efficiently service Lifetouch's customers and develop new business on behalf of Lifetouch. And, without the time, effort, and substantial expenses incurred by Lifetouch to develop its customer goodwill, Nitkin and Cohen could not have been successful with those accounts.

**Wilson's and Walsworth's Knowledge of the Restrictive Covenants**

22.      Based upon my review of Lifetouch's business records, Alexander Wilson and Lifetouch entered into a Sales Professional Employment Agreement effective April 17, 2015, and was a Sales Representative for Lifetouch until in or about October of 2017.  A true and accurate copy of the Wilson Agreement is attached hereto as Exhibit 4.  Upon information and belief, through his employment with Lifetouch, Wilson knew that all sales employees and sales managers at Lifetouch are required to enter into employment agreements containing non-solicitation and non-disclosure provisions.

23.      The yearbook business is highly competitive, and it is well known in the industry

7

that employment agreements for sales representatives generally contain restrictive covenants, including non-solicitation and non-disclosure provisions.

24.     Lifetouch has communicated with Walsworth on numerous occasions to demand that newly-hired Walsworth employees cease and desist from expected violation of their non-solicitation and/or non-disclosure provisions.  Based upon my review of Lifetouch's business records and internal discussions at Lifetouch, after Wilson resigned from Lifetouch and went to work for Walsworth, Lifetouch received information indicating that he may have been soliciting his Lifetouch customers and, upon learning such information, Lifetouch sent Walsworth and Wilson cease and desist letters for his expected violation of his non-solicitation provision.  True and accurate copies of the cease and desist letters to Walsworth and Wilson are attached hereto as Exhibit 5 and 6, respectively.

<b>Nitkin's and Cohen's Violations of Their Restrictive Covenants</b>

25.     On September 30, 2019, Nitkin submitted a resignation letter to Lifetouch.  A true and accurate copy of Nitkin's resignation letter is attached hereto as Exhibit 7.

26.     On September 30, 2019, I reviewed Nitkin's recently sent emails after she submitted her resignation.  Through that review, I discovered that Nitkin sent a mass email using her Lifetouch email account to seventy-two (72) of her Lifetouch customers.  A true and accurate copy of Nitkin's email to her Lifetouch customers on September 30, 2019, is attached hereto as Exhibit 8.

27.     On October 2, 2019, Cohen submitted a resignation letter to Lifetouch.  A true and accurate copy of Cohen's resignation letter is attached hereto as Exhibit 9.

28.     On October 2, 2019, I reviewed Cohen's recently sent emails after she submitted her resignation.  Through that review, I discovered that Cohen sent a mass email using her

8

Lifetouch email account to one hundred twenty-four (124) of her Lifetouch customers. A true and accurate copy of Cohen's email to her Lifetouch customers on October 2, 2019, is attached hereto as Exhibit 10.

29. On October 11, 2019, Bob Sasena, a Lifetouch employee, forwarded me an email from Melissa Trzasko at Southwick Regional Schools ("Southwick"). When Cohen was employed by Lifetouch, she called upon Southwick and served as its Sales Representative. Ms. Trzasko's email stated: "This is the email that I received from Walsworth. Prior to the email from Debbie, I had never heard of this company or had any contact with anyone from this company." The email below was an email from Nitkin, soliciting business on behalf of Walworth. A true and accurate copy of the October 11, 2019 email that I received from Mr. Sasena is attached hereto as Exhibit 11.

30. On October 25, 2019, Mr. Sesena forwarded me an email that he received from Marc Zimmerman. Mr. Zimmerman is the yearbook adviser for Bristol Eastern High School. When Cohen was employed by Lifetouch, she called upon Bristol Eastern High School and served as its Sales Representative. The email from Mr. Zimmerman stated: "I had an unexpected visit by Susan Gillam. She was turned away after showing up unannounced and asking to see Amy. She left her card so I emailed her and told her we would not discuss anything until the end of the year, since I thought that's when I contract ended." A true and accurate copy of the October 25, 2019 email that I received from Mr. Sesena is attached hereto as Exhibit 12.

31. On October 28, 2019, I received an email from Mr. Sasena, with the subject "Windham High School." When Nitkin was employed by Lifetouch, she called upon Windham High School and served as its Sales Representative. The email from Mr. Sesena included a photograph of a handwritten note from Susan Gillam ("Gillam") solicit their business on behalf of

9

Walsworth. A true and accurate copy of the October 28, 2019 email that I received from Mr. Sesena is attached hereto as Exhibit 13. Mr. Sesena informed me that he learned that Gillam left the photographed note at Windham High School.

32.     On October 30, 2019, I received an email from Peter Greer, a Lifetouch employee, stating that he received a report from Lauren Reuter, the yearbook adviser for Pioneer Valley Performing Arts Charter Public Schools ("PVPAC"), that Nitkin and a "man" were "harassing" PVPAC to do business with Walsworth. When Cohen was employed by Lifetouch, she called upon PVPAC and served as its Sales Representative. The email chain from Mr. Greer included an email from Nitkin soliciting business on behalf of Walsworth. A true and accurate copy of the October 30, 2019 email that I received from Mr. Greer is attached hereto as Exhibit 14.

33.     On October 30, 2019, Mr. Sesena forwarded me an email that he received from Jessica Bromberg-Alvarado. Ms. Bromberg-Alvarado is the yearbook adviser for Fairchild Wheeler Magnet High School ("FWMHS"). When Nitkin was employed by Lifetouch, she called upon FWMHS and served as its Sales Representative. The email chain from Ms. Bromberg-Alvarado contained an email from Cohen soliciting the business of Fairchild Wheeler Magnet High School on behalf of Walsworth. A true and accurate copy of the October 30, 2019 email that I received from Mr. Sesena is attached hereto as Exhibit 15.

34.     Based on my review of the WhatsApp Chats and communications that I have received from Lifetouch's customers, Nitkin has directly called upon and solicited business from at least the following Lifetouch customers on behalf of Walsworth, all of whom she called upon when actively employed by Lifetouch: Cheshire Academy, E.O. Smith High School, William M. Davies Career & Technical High School, Cromwell High School, and Newington Public Schools.

35.     Based on my review of the WhatsApp Chats and communications that I have

10

received from Lifetouch's customers, Cohen has directly called upon and solicited business from at least the following Lifetouch customers on behalf of Walsworth, all of whom she called upon when working for Lifetouch:  Avon High School, Bristol Eastern High School, Ledyard High School, Providence College, Southwick Regional School, New England Jewish Academy, East Granby High School, Tolland High School, Northwest Regional School District No. 7, South Lancaster Academy, Westford Academy, Bristol Eastern High School, Agawam High School, Gilbert High School, Cohasset High School and/or Cohasset Middle School, William H. Hall High School, Waltham High School, Pope Francis Preparatory School, Brown University, Griswold High School, St. Peter Marian Junior-Senior High School, and University of Hartford.

36.     Lifetouch has received numerous communications from Nitkin's and Cohen's previous Lifetouch customers seeking to cancel their contracts to take their business to Walsworth. Upon information and belief, these customers are requesting to cancel their contracts based on Nitkin's and Cohen's solicitation of these customers on behalf of Walsworth, and the indirect solicitations of these customers by other Walsworth employees on their behalves.  Nitkin's solicitations and attempts to divert Lifetouch's customers have already caused Lifetouch to lose the expected repeat business of at least 8 schools, and Cohen's solicitations and attempts to divert customers have already caused Lifetouch to lose the expected repeat business of at least 4 schools.

37.     Lifetouch is threatened with the loss of more and more of its customers by the day. Lifetouch has been, and continues to be, forced to compete to maintain its own customers, including by offering concessions in their contracts.  Lifetouch has relocated experienced Sales Representatives from other territories to compete to maintain such customers.

11

I state under penalty of perjury that the foregoing is true and correct. Executed on the 1st day of November, 2019.

CRAIG BROWN

12

# Exhibit 1

**PHOTOGRAPHY FOR A LIFETIME®**

# THE LIFETOUCH COMPANIES
# EMPLOYEE HANDBOOK

**Revised January 2013**

you and the appropriate manager(s) or supervisor(s), will review, evaluate and respond to your request.

## ALCOHOL AND DRUGS

Lifetouch is fully committed to integrity in all aspects of its business, including products, services, and relationships with its employees, customers, and the communities within which we live and work. It is incumbent upon Lifetouch and all its family of employees to provide a workplace that is safe, productive, and free of alcohol and drug abuse. For this reason, except as permitted by the paragraph below, Lifetouch prohibits the use, possession, distribution, and sale of alcoholic beverages, marijuana and illegal drugs in the workplace and on Lifetouch premises. Lifetouch also prohibits employees from working or reporting to work when under the influence of alcohol, marijuana or illegal drugs.

For purposes of this policy, "illegal drugs" includes legal drugs that were not legally obtained or that were used for purposes other than the purpose for which they were prescribed.

Lifetouch recognizes that on occasion and only with the express permission of Lifetouch management, alcoholic beverages may be served at Lifetouch-sponsored social functions. Under no circumstances may alcoholic beverages be served to underage individuals during any Lifetouch event. No employee is required or urged to drink alcohol at any such function or as a part of the employee's job. Whether or not you decide to do so is your own personal choice. If you do drink alcohol at a company-sponsored function or business-related event, you may not drive while impaired by alcohol. Lifetouch employees are expected to conduct themselves in a professional and appropriate manner at any Lifetouch function.

Impairment of work performance due to use or abuse of these substances can be detrimental to our safety commitment and lessen the respect of our many customers. Lifetouch encourages employees to seek help with any drug or alcohol problem, including drug or alcohol dependency, before such problem affects their job performance. While drug or alcohol dependency itself is not grounds for discipline, any work problems resulting from such use or dependency, and any violation of this policy, may result in disciplinary action up to and including termination of employment.

### SMOKING/SMOKELESS TOBACCO

Smoking and the use of smokeless tobacco is prohibited in all non-smoking areas.

### PROPRIETARY AND PERSONAL INFORMATION

For many years, Lifetouch has made significant investments to establish a successful photography and publishing business, famous brand name, and valuable customer and employee base. Lifetouch's proprietary and trade secret information has independent, economic value to Lifetouch because it is not generally known to the public and must be protected and kept

10

confidential. Similarly, confidential information about individual Lifetouch customers, employees, and others must be adequately secured.

In return for access to these important and valuable assets of Lifetouch, employees must, at all times during and after employment with Lifetouch, maintain all Lifetouch Proprietary Information and Personal Information (as defined below) in the strictest confidence and will not, directly or indirectly, disclose or make Lifetouch Proprietary or Personal Information available to any unauthorized person or entity or use it for a person's own personal benefit. Lifetouch Proprietary and Personal Information may be disclosed only to Lifetouch employees who need to know it and who have signed a Confidentiality Agreement. Lifetouch Proprietary and Personal Information may only be used as required to carry out employment duties for Lifetouch and for no other purposes whatsoever. When joining Lifetouch, employees agree to follow all Lifetouch safeguards and procedures to protect Lifetouch Proprietary and Personal Information from unauthorized access or disclosure.

For purposes of this policy, the following definitions apply:

1.  **Definition of Proprietary Information.** Lifetouch Proprietary Information is owned by Lifetouch and includes, without limitation:

    - technical information such as trade secret processes or devices, know-how, technology, data, software, formulas, inventions (whether or not patentable or copyrighted), specifications and characteristics of products or services planned or being developed, and research subjects, methods and results;

    - business information such as costs, profits, pricing, commissions, scheduling, training, policies, markets, sales, suppliers, customers, contracts, product plans, and marketing plans or strategies, financial reports and projections, production methods, techniques and volume;

    - human resources information such as employment policies and practices, personnel, information and files, compensation and employee benefits; and

    - other information not generally disclosed by Lifetouch to the public.

2.  **Definition of Personal Information.** Personal Information includes any individually identifiable information provided to Lifetouch by customers, potential customers, and employees and third parties in confidence.

If employment with Lifetouch ends for any reason, employees must continue to treat as private and confidential any and all Lifetouch Proprietary or Personal Information that became known to them as a result of their employment. Proprietary and Personal Information may not be used, divulged or communicated to any person or entity, unless required by law, without the express written approval of a Lifetouch officer. Lifetouch may pursue legal remedies for the unauthorized use or disclosures of Proprietary or Personal Information.

11

If you are in possession of a previous employer's or another's confidential information and materials, you have an obligation not to disclose them to anyone at Lifetouch and must not do so. You are also prohibited from violating the rights of any other party in connection with your work, and must honor all copyrights and other rights in computer software, photographs, drawings, written works, music and other materials licensed for use or entrusted to Lifetouch or its clients.

## CONFLICT OF INTEREST

Lifetouch expects its employees to devote their full work time, energies, abilities and attention to our business. Employees are expected to avoid situations that create an actual, potential or perceived conflict between the employee's personal interests and the interests of Lifetouch.

A conflict of interest exists when an employee's loyalties or actions are divided between Lifetouch and a competitor, supplier, or customer. Employees who are unsure whether a certain transaction, activity, or relationship constitutes a conflict of interest under this policy should discuss it with their supervisor or Human Resources for clarification. Any exceptions to this policy must be approved in writing by an officer of Lifetouch.

Some examples of the more common conflicts that should be avoided by all employees include, but are not limited to:

- Accepting personal gifts or entertainment valued in excess of $25.00 from competitors, customers, suppliers or potential suppliers;

- Working for a competitor, supplier or customer while employed by Lifetouch where doing so results in an actual and material conflict of interest;

- Engaging in self-employment in competition with Lifetouch;

- Using Proprietary or Personal Information for personal gain or to Lifetouch's detriment;

- Having a direct or indirect financial interest in or relationship with a competitor, customer or supplier;

- Using the Company's premises, equipment, products, materials, tools or resources for personal gain or to Lifetouch's detriment;

- Soliciting Lifetouch customers for personal gain;

- Acquiring any interest in property or assets of any kind for the purpose of selling or leasing it to Lifetouch unless approved in writing by an officer of Lifetouch; and

- Committing Lifetouch to give its financial or other support to any outside activity or organization without appropriate written authorization from an officer of Lifetouch.

12

## VII.  EMPLOYEE STOCK OWNERSHIP PLAN (ESOP)

Lifetouch is a 100% employee-owned company.  Ownership is held in a trust by the Lifetouch Inc. Employee Stock Ownership Plan (ESOP).  The ESOP allows participants to share in the growth and prosperity of the Lifetouch Companies and provides participants with an opportunity to accumulate funds for their retirement needs.  All contributions to the ESOP are made by Lifetouch.

To become eligible to participate, you must have worked for Lifetouch for 700 hours in your first 12 consecutive months of employment.  If you do not complete 700 hours in the first consecutive 12-month period, you will become eligible if you complete 700 hours in a plan year (July 1 – June 30).  Hours are credited in the plan year that you are paid.  Provided that you continue as an employee, you will become a participant in the Plan as of the next July 1 or January 1. Participants will be notified by the ESOP Plan Administrator in September when they first become eligible to participate in the plan.

Participants who are credited with 700 hours in the plan year (July 1 – June 30) will receive an allocation of any contribution made to the ESOP by Lifetouch, based on your compensation.

Participants become vested in their account balance as shown below.  A year is a plan year (July 1 through June 30) in which you are paid for working 700 hours.  The vesting schedule is as follows:

| Years of Service | Percent Vested |
|---|---|
| Less than 2 years | 0% |
| 2 years | 20% |
| 3 years | 40% |
| 4 years | 60% |
| 5 years | 80% |
| 6 years | 100% |

If you die or become disabled while an employee, your account will also be 100% vested.  If you attain age 60 while an employee, even though you have not met the years of service, your account will be 100% vested.

Prior to July 1, 2008, the 700 hour requirement was 1,000 hours.

Additional information is available at http://intranet.lifetouch.net/esop/default.aspx

## VIII.  LEAVING LIFETOUCH

**SEPARATION FROM EMPLOYMENT**

Every employee is free to terminate his or her employment at any time, with or without cause or notice.  Likewise, Lifetouch is free to terminate an employee's employment at any time for any

38

reason, with or without cause or notice. It is preferred that you provide your supervisor with as much advance written notice of your separation as possible.

All Lifetouch property must be returned to Lifetouch on the last day of employment, or earlier if requested, including but not limited to: keys, credit cards, security cards, computers, cell phones tools, business information, and manuals.

## REFERENCES

Lifetouch does not provide employee references. Individuals and companies who contact Lifetouch seeking employment information concerning former employees will only be provided with information confirming employment, date of hire, date of termination and position held. All inquiries regarding employment information and reference requests should be directed to Human Resources for response.

## THE CONSOLIDATED OMNIBUS BUDGET RECONCILIATION ACT (COBRA)

Insurance coverage will end upon termination of employment. Coverage may also be lost in instances such as a reduction in hours or nonpayment of past due premiums. If insurance coverage is lost, COBRA allows employees and their families the opportunity to temporarily extend insurance coverage (called "continuation coverage") in certain circumstances. A COBRA notice will be sent to your last known address describing your continuation options and costs.

If you are covered under a Lifetouch medical, dental, or life insurance plan (continuation of life insurance coverage applies to Minnesota residents only), you have a right to elect to continue that coverage at group rates at your own expense if you lose that coverage because of a reduction in hours or the termination of employment (for reasons other than gross misconduct on your part). If applicable, your spouse and/or dependent children may also have the right to elect to continue coverage even if you do not make the election.

The procedures and payments required to continue coverage will be outlined in the COBRA notice. If you do not receive a COBRA notice promptly after losing coverage, you should contact Human Resources.

If you do not choose continuation coverage, or if you choose continuation coverage and fail to pay the premiums, your group health, dental and life insurance coverage under the plans will end. Please contact Human Resources for additional information and specific questions regarding your individual circumstances.

## RETIREMENT AND ELIGIBILITY FOR REHIRE

Retirement is an important decision. When you retire, you are terminating your employment from Lifetouch. There are two types of retirement:

- Normal retirement at or after age 60; and

39

- Early retirement when you are between age 55 and 60 and have completed 11 years of service.

If you decide to return to work for Lifetouch after retirement, you may apply at any time. The position that you previously held will not remain open for you. Like all previous employees, retired employees must be approved by Human Resources before rehire.

If you have received ESOP distribution(s) prior to being rehired, further distribution payments will be discontinued while you are employed. Distributions will start again after termination of your most recent employment and will generally be paid in three installments. As an active employee, you will be eligible to receive an ESOP contribution if the eligibility requirements are satisfied.

The above statements are general in nature. There are specific procedures to follow when retiring and to receive ESOP benefits. The Plan document controls. Questions or inquiries about the ESOP should be directed to the ESOP Plan Administrator at 11000 Viking Drive, Suite 400W, Eden Prairie, MN 55344, or by e-mailing ESOP@lifetouch.com. Questions about re-employment should be directed to Human Resources.

## IX.  ELECTRONIC COMMUNICATIONS AND SYSTEMS POLICY

**POLICY HIGHLIGHTS**

**Authorized Users.**  Only Lifetouch employees, and contractors given permission by an officer of the Company, are authorized to use Communications Systems.  By using the Systems users agree to the terms of this Policy.

**Passwords and User IDs.** Users are responsible for the use and confidentiality of User's ID and password.  Passwords must be changed regularly to protect the security of Communications Systems.

**Management Access.**  Communications Systems, including voicemail and email, are Lifetouch business property and may be accessed by Lifetouch management at any time.

**Message Content.**  All messages on Communications Systems must be appropriate for the workplace.  Gossip, inappropriate personal information, threatening, insulting, offensive or sexually explicit messages, images, cartoons, jokes or stories are not permitted.

**Managing Data**.  Users must regularly delete messages from electronic storage.

**Software**. Software must be licensed and may only be copied for backup or archival purposes. Software should not be downloaded from the Internet without authorization from your Lifetouch computer support representative and personal software should not be used on Company systems.

**Virus Protection.**  Suspicious systems behavior must be immediately reported to your Lifetouch computer support representative.  Software, CDs and disks must be scanned for viruses unless

received from Lifetouch business partners, trusted user groups, or trusted computer or software vendors.

**Email Accounts.** Only email accounts at Lifetouch.com may be used for Lifetouch business-related communications. Other email accounts, such as hotmail, AOL, etc., should not be accessed from Lifetouch Communications Systems to avoid viruses. Sensitive or confidential information should not be transmitted by email. The number of persons copied on an email should be limited to avoid taking up valuable time and systems capacity.

**Report Problems.** Communications Systems problems, such as loss of sensitive Lifetouch information, unauthorized use of systems, loss or disclosure of passwords or systems access control, unusual systems behavior, or violations of this Policy should be immediately reported to Human Resources. Violators will be subject to discipline, including termination of employment and criminal prosecution.

## POLICY OVERVIEW

**Introduction.** Lifetouch Inc. and its subsidiaries (collectively, "Lifetouch" or "Company") provide various electronic and computer equipment, services, networks, technology and infrastructure for Lifetouch business purposes, including without limitation, hardware, software, data and applications ("Communications Systems") accessed through telephone systems, electronic mail, voice mail, audio and video conferencing, facsimiles, photocopiers, computers personal digital assistants (PDAs), computer networks, Internet access and other electronic equipment and services (collectively, "Devices"). Communications Systems represent a significant investment of resources to enhance Company productivity, work processes and business communication by and between users. This policy outlines Company expectations for appropriate use and protection of Communications Systems and Lifetouch confidential and proprietary information.

**Policy Application.** This Policy applies to all users of Communications Systems, whether the user is an Employee or authorized contractor. ("User") All users are expected to read, understand and comply with this Policy. Unless otherwise specifically noted, this Policy applies to Devices owned by Lifetouch and Users, if connected to Communications Systems. By using Communications Systems, User agrees to the terms of this Policy.

**Ethical, Professional Judgment Required.** It is not feasible to cover every detail of Communications Systems' use in this Policy. Users are required to exercise ethical and professional judgment when using Communications Systems. When questions arise, Users are expected to promptly resolve them with a Human Resources Director or Vice President.

**Consequences of Policy Violation.** Anyone who accesses Lifetouch Communications Systems without proper authority, or uses it for any purpose detrimental to Lifetouch or in violation of Lifetouch policies may be subject to disciplinary action including termination of employment, and/or criminal prosecution.

### Ownership and Maintenance of Systems and Information

Ownership of Information Sent or Received. Equipment connecting to Communications Systems may be Lifetouch owned or User owned. Regardless of ownership, all information traveling over Lifetouch Communications Systems that has not been specifically identified as the property

41

of other parties such as Lifetouch business partners is considered Lifetouch property. Users of Lifetouch Communications Systems do not own or have an expectation of privacy regarding such information. Lifetouch prohibits unauthorized access, duplication, disclosure, modification, diversion, destruction, loss, misuse, theft or unauthorized encryption of this information.

**Ownership of Equipment.** To the extent that access to Lifetouch Communications Systems is through a User owned computer or other Device, User is responsible for maintaining the configuration standards mandated by the Lifetouch technology department. Except as otherwise specifically referenced in this Policy, all provisions of the Policy apply to both Lifetouch owned and User owned computers and devices. All accessories to User owned equipment that connect to Communications Systems, such as a PDA must meet Lifetouch standards.

**Repairs and Maintenance.** Lifetouch has no responsibility for maintaining or repairing User owned Devices or providing advice or support for non-Lifetouch Devices. User is fully responsible for relationships with User's ISP and other vendors. If however Lifetouch technicians repair or perform maintenance on any equipment accessing Communications Systems, whether owned by Lifetouch or User, the equipment may be cleaned and configured to Lifetouch standards. This may include, without limitation, stripping any unauthorized software found loaded on the computer or other Device. Lifetouch has no responsibility to User for software or data of User loaded on the computer or other Device. To the extent that violation of this Policy caused the repairs or maintenance to be performed, User may be assessed a service charge.

**Physical Security of Devices.** Users are responsible for the physical security of Devices. Devices should be locked when not in use and kept secure from use by unauthorized persons or theft.

**Device Configuration.** Lifetouch standard configurations must be maintained on Lifetouch owned Devices (such as company desktops and laptops) and User owned Devices that directly access Communications Systems (such as territory office computers linked through VPN). Users will make no unauthorized changes, additions or deletions to these Devices, including without limitation to the configuration, adding or deleting software, loading music, games, or other Internet downloads. Questions may be directed to your Lifetouch computer support representative.

**Disposal of Devices.** Devices must be disposed of properly. Proper disposal includes reformatting the hard drive, working with a local vendor utilizing their equipment disposal services, or otherwise ecologically disposing of the Device. Questions may be directed to your Lifetouch computer support representative.

**Use of Systems and Information**

**Authorized Users.** Only employees and other authorized persons conducting Lifetouch business may use Lifetouch Communications Systems. Access to Lifetouch Communications Systems must be approved by the individual's supervisor/manager and is limited to persons who have signed this Policy.

Lifetouch Companies Employee Handbook
Revised January 2013

**Passwords and User IDs.** Once access has been approved, the User will be issued a user ID and password. All Users are responsible for the use and confidentiality of their ID and password. Users who access information without proper authorization will be subject to discipline.

**Encryption.** Users may not utilize personal encryption coding on Communications Systems. Use of encryption is limited to Lifetouch business purposes in accordance with standards adopted by the Company from time to time. For example, but not in limitation, encryption technology will be used to transmit credit card information for Lifetouch business transactions.

**Limited Personal Use.** Incidental and occasional (appropriate) personal use of Lifetouch Communications Systems is permitted, but personal messages, just as with business messages, may be accessed, intercepted or deleted by Lifetouch managers or by automated security systems without regard to content and without notice.

**Not All Electronic Messages are Private.** While Communications Systems are protected by firewalls and relatively secure from the outside world, Users should not assume that electronic messages (sent via external access including the Internet) are private. It is possible for electronic communications to be forwarded, intercepted, printed, and stored by others, including individuals outside Lifetouch. There is no absolute guarantee of privacy. When communicating information electronically, be careful to protect Lifetouch interests and your own liability.

**Monitoring.** Lifetouch expressly reserves the right to access, monitor, read, copy, print and/or disclose any e-mail, voice mail, electronic files or other data records created, received and/or stored through Lifetouch Communications Systems. Users of Lifetouch Communications Systems do not own or have an expectation of privacy regarding such information.

The Company regularly monitors the Communications Systems for maintenance and usage, including the investigation of anyone suspected of using Lifetouch systems contrary to this or any other Company Policy.

Anyone who uses Lifetouch Communications Systems consents to Company monitoring.

Lifetouch reserves the right to examine electronic communications, personal file directories, and any other information stored on or traveling over Lifetouch Communication Systems, without prior notice to assure compliance with internal policies and licensing agreements

**Entertainment.** Lifetouch Communications Systems may not be used to download, make copies of, store, or share music, videos, games or similar entertainment, except as specifically required to fulfill the User's Company responsibilities and as authorized in writing by Lifetouch. This rule applies regardless of whether the User owns a copy (e.g. a compact disc or videotape) of the content or is acting outside of the User's work hours or on Lifetouch premises.

**Inappropriate Messages.** The content of messages sent on Lifetouch's Communication Systems must be appropriate for the workplace.

Communications Systems may not be used for gossip, inappropriate personal information, to forward messages which might embarrass the sender, receiver, or others.

Communications Systems should not be used in any way that is threatening, insulting, disruptive, offensive or harmful to the Company or employee morale.

Communications Systems should not be used for private business activity, charitable, religious or personal causes, amusement, entertainment, solicitation or other similar, non-job-related activities.

Examples of inappropriate transmissions include sexually-explicit messages, images, cartoons or jokes; unwelcome propositions or love letters; chain letters; ethnic or racial slurs; any message that could be considered harassment or disparagement based on an individual's age, sex, race, sexual orientation, national origin, religious beliefs or other legally protected classes.

**Use Caution When Forwarding and Copying Messages.** Electronic communications may include information that is not appropriate for general distribution. Information must not be forwarded to any party who is not intended or authorized to receive it.

**Managing Data.** Messages that are no longer needed should be regularly deleted from electronic storage areas. Electronic messages backed-up to a separate data storage media (tape, disk, CD-ROM, etc.) will be deleted periodically by systems administration staff to maximize storage space; it also simplifies records management and related activities. However, keep in mind that even after data is deleted, it is subject to retrieval, particularly as it relates to legal discovery and investigations.

**Transmission of Confidential Information.** Lifetouch's confidential information and trade secrets are valuable business assets, in part because they are not readily known or easily attainable. Access from shared computers and communication via on-line services is not secure or private. Messages and information may be intercepted or read by unintended readers and stored for future searches for an undetermined period of time. Information about Lifetouch, its employees, pay systems, size, growth, markets, sales, or plans for the future, etc. must not be published, stored or transmitted on external locations (including the Internet) without the prior written approval of a Vice President or above.

Confidential information should only be published or transmitted on a need to know basis and all communications containing confidential information must be marked "Confidential" and contain the following Confidentiality Note:

**Confidentiality Note:** This e-mail and any attachment to it contain confidential and trade secret information intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the User or agent responsible for delivering it to the intended recipient, you are notified that reading, copying, forwarding or printing it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system.

**Electronic Mail (E-mail).** E-mail has become one of the major forms of business communications. Because e-mail is not always private, the following procedures must be followed for all Lifetouch business-related e-mail and voice mail communications:

All Lifetouch business-related e-mail communications must be conducted using e-mail accounts on the centralized Corporate e-mail server. E-mail accounts hosted by third-party Internet providers, such as AOL or MSN, store messages on servers that are not owned by Lifetouch and are beyond Lifetouch's control and security measures.

E-mail accounts used for Lifetouch U.S. business must use the "lifetouch.com" Internet domain and Lifetouch Canada must use the Lifetouch.ca Internet domain name, unless approved in advance, in writing, by the Corporate Vice President of Information Systems.

Do not transmit sensitive or confidential information via e-mail over the Internet to or from a non-Lifetouch.com address. E-mail messages transmitted over the Internet using a non-Lifetouch

44

address are NOT secure and can be intercepted by third parties. Examples of information that should not be transmitted via Internet e-mail:

- Images accompanied by personal data such as name, school, or address
- Credit card numbers
- Confidential business or sales data
- Employee personal information

**Voice Mail.** Do not leave voice mail messages containing sensitive or confidential information. Do not forward or save voice mail messages containing sensitive or confidential information.

### Software and Viruses

**Software Licenses.** Lifetouch acquires computer software from a variety of sources and adheres to license agreements and restrictions regarding computer software. Users may not copy licensed software except for backup or archival purposes. Unauthorized duplication of software may result in civil and criminal penalties under the United States Copyright Act.

**Software Purchase Policy.** Purchasing software to be used on Devices that access Communications Systems is restricted to ensure that Lifetouch has a complete record of all software used on Lifetouch-owned Devices and that software is free from viruses. This enables Lifetouch to register, support, track and upgrade software as necessary. Unless otherwise approved by your Lifetouch computer support representative, only software that has been acquired through Lifetouch business partners or knowledgeable and trusted user-groups or vendors may be used on Lifetouch Communications Systems.

**Lifetouch owned Devices, such as a company laptop docked to the corporate network: All software must be acquired through the Purchasing Department.**

**User Owned Devices that directly access Communications Systems ("Direct Access User Owned Device"),** such as territory office or studio computers linked through VPN: Software must be acquired only with the prior approval of the appropriate manager. Company recommendations for hardware and software must be followed, and all copyrights must be honored. The Territory Manager must maintain a complete record of all software used on Communications Systems in the Territory. A form for reporting purposes may be retrieved from Microsoft Outlook Public Folders or your Lifetouch computer support representative. This enables the Territory Manager and Lifetouch to register, support, track, and upgrade software as necessary.

**User Owned Devices that access Communications Systems remotely,** such as access through a home computer, Internet café or library. Software used on the Device must not affect the configuration necessary to access Communications Systems.

**Compliance Audit.** Devices are subject to review and scanning for compliance with this policy.

**Software Loading Policy.** Users may not load or download from the Internet or any other source any software on any Lifetouch Device or Direct Access User Owned Device without approval from your Lifetouch computer support representative.

45

Users are not permitted to load software or programs on Lifetouch Devices or Direct Access User Owned Devices (e.g., personal money management software, music sharing software) because there is potential for changing configuration and interfering with access to the Lifetouch system.

Lifetouch -owned software may not be taken or copied for use on a User's personally-owned computer unless authorized by your Lifetouch computer support representative.

**Disposal of Outdated Manuals and Software.** Before disposing of outdated manuals and software in a trash container, shred the manuals and thoroughly erase or destroy the CD or disk.

**Reporting Use of Restricted Software.** The use of unauthorized software copies must be brought to the immediate attention of your Lifetouch computer support representative.

**Virus-Protection Policies.** It is extremely important to protect Devices and the Communications Systems from viruses. Detecting a virus, removing it and repairing its effects are time-consuming and costly. Among the symptoms of a virus infection are much slower response time, inexplicable loss of data, changed modification dates for files, increased file sizes, mis-routed messages, frequent system crashes and total failure of the Device.

Immediately report any suspicious systems behavior to your Lifetouch computer support representative.

Software, disks and CD's obtained from outside locations such as electronic message boards, the Internet, shareware, public domain software, and other non Lifetouch sources, including the sources listed in this Policy, as well as CD's and disks containing data from a non-Lifetouch Device must be scanned and cleaned by Lifetouch-approved virus detection software before being used on a Device used for Lifetouch business. Contact your Lifetouch computer support representative for approved anti-virus software.

**Security and Remote Access**

**Security**

Lifetouch commits significant resources to ensure that Communications Systems remain secure.

- Accessing the Lifetouch computer network through any method other than direct connection to the network, dial up, VPN or OWA, requires the prior written authorization of your Lifetouch computer support representative.
- While connected to the Lifetouch computer network, Users must not access the Internet through a dial up modem or dial up service (e.g. AOL, MSN Internet software).
- Users who use a hardware VPN device (e.g. SonicWall) to access Lifetouch Communication Systems may not use wireless connectivity without prior authorization from your Lifetouch computer support representative.
- If you have any questions whether an application is approved for use with Lifetouch Communications Systems, call your Lifetouch computer support representative.

**Remote Access**

Users who require remote access to Lifetouch computer systems must obtain authorization from a director-level employee or above.

- Users who are granted remote access are responsible for the confidentiality and integrity of the access numbers and their password.

46

- Remote users are also responsible for support and maintenance of the remote Device unless other arrangements have been approved by the Corporate Vice President of Information Systems.

- After entering the Lifetouch system via remote access, Users must not leave the computer unattended. After completing a session, Users must immediately log off the Lifetouch system to avoid the possibility of non-authorized persons gaining access to Communications Systems.

- When using remote access (OWA, or Outlook Web Access) on a public or shared computer (i.e. a computer not owned by Lifetouch or dedicated solely to Lifetouch business purposes), to the extent possible, use the "public computer" access option so that e-mail file attachments are not saved to that computer, with a risk that others may view them.

### Administration of Policy and Reporting Security Problems

**Central Source for the Entire Lifetouch Organization.** The Corporate Information Systems Steering Committee is the central source responsible for administering organization-wide information security policies and procedures. Please contact the Committee for guidance, direction and authority as needed.  Correspondence should be directed to:

> Corporate Vice President of Information Systems
> Lifetouch Inc.
> 11000 Viking Drive
> Eden Prairie, MN 55344

You may also send questions and comments by email to policyinfo@lifetouch.com.

**Report Information Breaches Immediately.** Notify your manager immediately (who will then inform the facility's manager, Human Resources Director or Vice-President) if the following is either known or suspected:

- sensitive Lifetouch information is lost or disclosed
- Communications Systems have been used by an unauthorized party
- passwords or other system access control mechanisms are lost, stolen, or disclosed
- Systems or information are misused, damaged or abused.

**Report Unusual Systems Behavior Immediately**.  Unusual systems behavior may be due to a virus infection or a similar security problem, and it is important to eliminate a virus or security problem before it spreads.

Notify your tech support personnel immediately of unusual systems behavior such as:

- missing files
- frequent system crashes

47

- mis-routed messages
- any suspicious systems behavior

The specifics of security problems should not be discussed widely. Discretion should be exercised and information shared only on a need-to-know basis.

# Exhibit 2

4847-4

## LIFETOUCH NATIONAL SCHOOL STUDIOS INC.
## SALES REPRESENTATIVE EMPLOYMENT AGREEMENT

THIS AGREEMENT is between Lifetouch National School Studios Inc. ("Lifetouch" or "Company") and ___Risa Nitkin___ ("You" or "Employee"). The effective date of this Agreement is _June 25_, 20 08.

You are entering into this Agreement in consideration for your employment by Lifetouch as a Sales Representative. You and Lifetouch agree as follows:

1. **Responsibility.** As a Sales Representative, you will be responsible for selling Lifetouch products and services as directed by your manager. If directed by your manager, you may also be responsible for taking photographs. Products and services may include portraits, memory books, yearbooks and other portrait and related products and services to students, schools, organizations, leagues, clubs and other school and sports-related organizations. You will also be responsible for performing administrative services in connection with your selling efforts. You will direct your sales efforts to the customers and potential customers assigned to you by your manager. The Company retains the right and authority in its sole discretion to change the customers and potential customers assigned to you and to add or remove products and services from your assigned responsibility. You are responsible for understanding and complying with all current Lifetouch policies, procedures, rules, regulations and guidelines. Lifetouch may modify or revoke policies, procedures, rules and regulations from time to time in its sole discretion. You agree to use the Lifetouch name and reputation exclusively for the benefit of Lifetouch, in the manner directed by Lifetouch and to at all times conduct yourself and Lifetouch business in a lawful and respectable manner.

2. **Duty of Loyalty.** As an employee of Lifetouch, you are expected to perform your duties and conduct yourself in a lawful and respectable manner in the best interests of the Company. You will devote your full working time and attention exclusively to your responsibilities as a sales representative for Lifetouch products and services. You will not provide services or products of any kind or engage in any business activity that will interfere with your duty of loyalty to Lifetouch.

3. **Compensation.** You will be paid for your services as described on the attached Exhibit A, as modified from time to time.

4. **Equipment.** Lifetouch will provide equipment and materials for you to use to perform your duties to Lifetouch. Lifetouch equipment and materials (both referred to as "Company Owned Materials") are to be used exclusively for Lifetouch business and according to Lifetouch's set up and operating procedures. All repairs, alterations and modifications to Company Owned Materials must be made only by authorized Lifetouch technicians. You understand and agree that Company Owned Materials are the sole and exclusive property of Lifetouch. You are responsible for the condition of the Company Owned Materials, except for normal wear and tear, and for damages caused by any unauthorized use or loss. Lifetouch will maintain an inventory of the Company Owned Materials under your control. This inventory will be conclusive and binding upon you and Lifetouch. You agree to immediately deliver to Lifetouch, upon written request, all of the Company Owned Materials provided to you.

5. **Supervision.** You will report to a manager designated by the Company.

6. **Banking and Sales Proceeds.** All sales proceeds you receive must be immediately deposited in a Lifetouch bank account established and opened by the Lifetouch Finance Department. You will not commingle sales proceeds with your personal funds or deposit them in an account other than the Lifetouch authorized account.

7.  **Authority to Bind the Company**.  You are not authorized to:  (1) sign a lease or purchase equipment or materials in the name of the Company without the prior written approval of an officer of Lifetouch; and/or (2) acknowledge or accept any summons, complaint or other legal service of process on behalf of Lifetouch.  All sales contracts are subject to approval by the Company.  All telephone numbers, website addresses, domain names, fax numbers and data lines used in conducting Lifetouch business must be in Lifetouch's name and under Lifetouch's control except as otherwise permitted by the Lifetouch Electronic Communications and Systems Policy.

8.  **Protection of Confidential, Proprietary and Trade Secret Information**.  For many years, Lifetouch has made significant investments to establish a successful photography business, famous brand name, and valuable customer and employee base.  Lifetouch's proprietary and trade secret information has independent economic value to the Company because it is not generally known to the public.  Lifetouch Proprietary Information must be protected and kept confidential. In consideration for access to these important and valuable assets of the Company, you agree as follows:

  a. **Definition of Proprietary Information.** Lifetouch Proprietary Information includes, without limitation:

  - technical information such as trade secret processes or devices, know-how, technology, data, software, formulas, inventions (whether or not patentable or copyrighted), specifications and characteristics of products or services planned or being developed, and research subjects, methods and results;

  - business information such as costs, profits, pricing, commissions, scheduling, training, policies, markets, sales, suppliers, customers, contracts, product plans, and marketing plans or strategies, financial reports and projections, production methods, techniques and volume;

  - human resources information such as employment policies and practices, personnel, information and files, compensation and employee benefits; and

  - other information not generally disclosed by the Company to the public.

  b. **Ownership**. Lifetouch Proprietary Information is owned by Lifetouch.

  c. **Definition of Personal Information**. Personal Information includes any individually identifiable information provided to Lifetouch by customers, potential customers and other employees and third parties in confidence.

  d. **Maintain Confidentiality.** At all times during and after your employment with Lifetouch, you will maintain all Lifetouch Proprietary Information and Personal Information in the strictest confidence and will not, directly or indirectly, disclose or make Lifetouch Proprietary or Personal Information available to any unauthorized person or entity or use it for your own personal benefit. Lifetouch Proprietary and Personal Information may be disclosed only to Lifetouch employees who need to know it and who have signed a confidentiality agreement.  Lifetouch Proprietary and Personal Information may only be used as required to carry out your employment duties and for no other purposes whatsoever.  You agree to follow all Company safeguards and procedures to protect Lifetouch Proprietary and Personal·Information from unauthorized access or disclosure.

  e. **No Solicitation of Employees**. During your employment by Lifetouch and for a period of eighteen (18) months immediately following termination of your employment, regardless of the reason, timing or party who initiates termination of employment, you promise and agree not to, directly or indirectly, either for yourself or any other person or entity, attempt to or actually solicit, encourage or hire any Lifetouch employee to work for a competing business or otherwise induce any

Lifetouch employee to terminate their employment with Lifetouch. For the purpose of this Agreement, a competing business will mean the business of soliciting, marketing, merchandising, promoting, and/or providing professional daycare and pre-school, student, school activity, memory/yearbook or related photographs, products or services or non-school sports and league, class reunion, prom and dance photographs, identification cards, related products or services and memory/yearbooks.

f. **No Solicitation of Customers or Potential Customers**. During your employment by Lifetouch and for a period of eighteen (18) months immediately following termination of your employment with Lifetouch, regardless of the reason, timing or party who initiates termination of employment, you promise and agree not to directly or indirectly, either for yourself or for any other person or entity, attempt to or actually call on, solicit or make sales to any Lifetouch customers or potential customers that you have called on at any time the 36 month period immediately preceding termination of your employment with Lifetouch or that employees working under your supervision have called on at any time during the 36 month period immediately preceding termination of your employment with Lifetouch for the purpose of providing products or services that are competitive with the products or services of Lifetouch.

g. **No Unfair Competition**. You agree that the unauthorized use, disclosure or sale of Lifetouch Proprietary Information is unfair competition. You also agree that unauthorized solicitation of Lifetouch employees and/or Lifetouch customers and/or any actions which disrupt Lifetouch business and its relationship with employees or customers during your employment and for eighteen (18) months following termination of your employment is unfair competition. You promise and agree not to engage in unfair competition with Lifetouch.

9. **Termination of Employment**. Your employment with Lifetouch is at-will and either you or Lifetouch may terminate employment at any time for any reason, with or without cause and with or without notice. The at-will nature of your employment cannot be changed except in a written agreement signed by you and an officer of Lifetouch, stating expressly that the at-will status of your employment is changed.

10. **Return of Property**. Upon termination of your employment for any reason, you agree to promptly deliver to Lifetouch all Lifetouch Property. "Lifetouch Property" includes all property used in connection with the business of the Company including but not limited to, Proprietary Information, Personal Information, Company Owned Materials, merchandise, proceeds of Lifetouch business, all business forms, calendars, stationary and materials containing Personal and Proprietary Information, and all copies, summaries or compilations in any form.

11. **Injunctive Relief**. You acknowledge and agree that any breach of this Agreement by you will cause Lifetouch irreparable injury for which there is not an adequate remedy at law. Therefore, you expressly agree that Lifetouch is entitled to injunctive relief in addition to any other remedies available to it in order to prevent damages resulting from a breach of this Agreement.

12. **Accounting/Return of Profits**. You acknowledge and agree that any breach of this Agreement will result in damage to Lifetouch which will be difficult to precisely ascertain. Therefore, you agree to provide Lifetouch with a monthly accounting of all sales made by you directly or indirectly in violation of this Agreement and to pay Lifetouch, on a monthly basis, all profits earned by you or your new employer as a result of your actions in the event of a breach.

13. **Portrait Release**. As a Lifetouch employee, you may be photographed or recorded for use in promotional and other materials. You irrevocably authorize Lifetouch, its affiliated companies, assigns and licensees ("Companies") to reproduce, display, publish, distribute, transmit and otherwise use your image and/or voice, both during and after your employment ends in whole, in part or in composite, with or without

your name, in any media to promote Lifetouch's business without reservation and you release the Companies from any claims relating thereto.

14. **Severability**. You agree that in the event any provision of this Agreement is found to be invalid, it is considered severable and will not invalidate, hinder or impair the binding nature and effect of any other paragraph or provision in the Agreement. You and Lifetouch agree that any court of competent jurisdiction may modify any unlawful provision of this Agreement in order to make the provision valid, reasonable and enforceable.

15. **Nondisparagement.** You agree that at all times during and after your employment with Lifetouch you will not speak in a derogatory or defamatory way about Lifetouch or Lifetouch management.

16. **Prior Agreements and Modifications**. This Agreement expressly supersedes any previous written or oral agreements between you and Lifetouch relating to employment, but does not eliminate any outstanding indebtedness. It represents the complete understanding between you and Lifetouch and may only be modified by a written agreement signed by you and an officer of Lifetouch.

17. **Successors and Assigns**. This Agreement is binding upon and enforceable by Lifetouch and its successors and assigns. This Agreement is binding upon you, and is personal to you and may not be assigned to any other person or entity.

18. **Survival**. The terms of paragraphs 8, 10, 11, 12, 13 and 15 will survive the termination of your employment by Lifetouch for whatever reason and remain in full force and effect.

LIFETOUCH NATIONAL
SCHOOL STUDIOS INC.

EMPLOYEE

By _____
Title _____
Date _____
S:\forms\LNSS\Sales Rep 4-27-07

Printed Name _____
Date _____

**EXHIBIT A**
**SALES REPRESENTATIVE EMPLOYMENT AGREEMENT**

**COMPENSATION PLAN**

**Risa Nitkin**
Effective July 1, 2008:

Commissions:   100%
Draw charged against Commissions Earned: $65,000(less withholding) per annum, and paid bi-weekly.

Effective July 1, 2008, draw will be based on 80% previous fiscal year's commission earned on sales delivered. Draw will be reviewed twice a year on or around September 15 (for January - June) and on or around March 15 for (July – December).  Settlement reviews/draw adjustments, and payouts will also occur on or around September 15 and on or around March 15.

Expenses submitted for reimbursement, and in accordance with Lifetouch Policy, will be charged against your Charge/Draw.

This compensation plan will be reviewed on an annual basis.

Commissions are defined as earned when invoices are fully paid. To receive commissions, Sales Representatives must be employed on the date the commission is earned.

The compensation plan described above is contingent upon meeting specific performance expectations and continuous employment through the periods specified.

Lifetouch National School Studios, Inc reserves the right to change or amend this Compensation Plan from time to time as business needs warrant.

This Exhibit amends and supersedes any prior Exhibit A.  Except as otherwise provided in this Exhibit, the Sales Representative Employment Agreement between the parties remains in full force and effect.

LIFETOUCH
NATIONAL SCHOOL STUDIOS, INC.

By
Title:

Date _____ 7/21/08 _____

EMPLOYEE

Printed Name ____ Risa N. Nitkin ____

Date ____ 4/25/08 ____

# Exhibit 3

85712
EB

## LIFETOUCH NATIONAL SCHOOL STUDIOS INC.
## SALES REPRESENTATIVE EMPLOYMENT AGREEMENT

THIS AGREEMENT is between Lifetouch National School Studios Inc. ("Lifetouch" or "Company") and Debra Cohen ("You" or "Employee"). The effective date of this Agreement is July 26, 2010.

You are entering into this Agreement in consideration for your employment by Lifetouch as a Sales Representative. You and Lifetouch agree as follows:

1.    **Responsibility.**  As a Sales Representative, you will be responsible for selling Lifetouch products and services as directed by your manager.  If directed by your manager, you may also be responsible for taking photographs.  Products and services may include portraits, memory books, yearbooks and other portrait and related products and services to students, schools, organizations, leagues, clubs and other school and sports related organizations. You will also be responsible for performing administrative services in connection with your selling efforts. You will direct your sales efforts to the customers and potential customers assigned to you by your manager. The Company retains the right and authority in its sole discretion to change the customers and potential customers assigned to you and to add or remove products and services from your assigned responsibility.  You are responsible for understanding and complying with all current Lifetouch policies, procedures, rules, regulations and guidelines. Lifetouch may modify or revoke policies, procedures, rules and regulations from time to time in its sole discretion.   You agree to use the Lifetouch name and reputation exclusively for the benefit of Lifetouch, in the manner directed by Lifetouch and to at all times conduct yourself and Lifetouch business in a lawful and respectable manner.

2.    **Duty of Loyalty.**  As an employee of Lifetouch, you are expected to perform your duties and conduct yourself in a lawful and respectable manner in the best interests of the Company. You will devote your full working time and attention exclusively to your responsibilities as a sales representative for Lifetouch products and services.  You will not provide services or products of any kind or engage in any business activity that will interfere with your duty of loyalty to Lifetouch.

3.    **Compensation**. You will be paid for your services as described on the attached Exhibit A, as modified from time to time.

4.    **Equipment**. Lifetouch will provide equipment and materials for you to use to perform your duties to Lifetouch.  Lifetouch equipment and materials (both referred to as "Company Owned Materials") are to be used exclusively for Lifetouch business and according to Lifetouch's set up and operating procedures.  All repairs, alterations and modifications to Company Owned Materials must be made only by authorized Lifetouch technicians.  You understand and agree that Company Owned Materials are the sole and exclusive property of Lifetouch. You are responsible for the condition of the Company Owned Materials, except for normal wear and tear, and for damages caused by any unauthorized use or loss.  Lifetouch will maintain an inventory of the Company Owned Materials under your control. This inventory will be conclusive and binding upon you and Lifetouch.  You agree to immediately deliver to Lifetouch, upon written request, all of the Company Owned Materials provided to you.

5.    **Supervision**. You will report to a manager designated by the Company.

6.    **Banking and Sales Proceeds.** All sales proceeds you receive must be immediately deposited in a Lifetouch bank account established and opened by the Lifetouch Finance Department.  You will not commingle sales proceeds with your personal funds or deposit them in an account other than the Lifetouch authorized account.

7.     **Authority to Bind the Company**. You are not authorized to: (1) sign a lease or purchase equipment or materials in the name of the Company without the prior written approval of an officer of Lifetouch; and/or (2) acknowledge or accept any summons, complaint or other legal service of process on behalf of Lifetouch. All sales contracts are subject to approval by the Company. All telephone numbers, website addresses, domain names, fax numbers and data lines used in conducting Lifetouch business must be in Lifetouch's name and under Lifetouch's control except as otherwise permitted by the Lifetouch Electronic Communications and Systems Policy.

8.     **Protection of Confidential, Proprietary and Trade Secret Information**. For many years, Lifetouch has made significant investments to establish a successful photography business, famous brand name, and valuable customer and employee base. Lifetouch's proprietary and trade secret information has independent economic value to the Company because it is not generally known to the public. Lifetouch Proprietary Information must be protected and kept confidential. In consideration for access to these important and valuable assets of the Company, you agree as follows:

    a. **Definition of Proprietary Information.** Lifetouch Proprietary Information includes, without limitation:

- technical information such as trade secret processes or devices, know-how, technology, data, software, formulas, inventions (whether or not patentable or copyrighted), specifications and characteristics of products or services planned or being developed, and research subjects, methods and results;

- business information such as costs, profits, pricing, commissions, scheduling, training, policies, markets, sales, suppliers, customers, contracts, product plans, and marketing plans or strategies, financial reports and projections, production methods, techniques and volume;

- human resources information such as employment policies and practices, personnel, information and files, compensation and employee benefits; and

- other information not generally disclosed by the Company to the public.

    b. **Ownership**. Lifetouch Proprietary Information is owned by Lifetouch.

    c. **Definition of Personal Information**. Personal Information includes any individually identifiable information provided to Lifetouch by customers, potential customers and other employees and third parties in confidence.

    d. **Maintain Confidentiality.** At all times during and after your employment with Lifetouch, you will maintain all Lifetouch Proprietary Information and Personal Information in the strictest confidence and will not, directly or indirectly, disclose or make Lifetouch Proprietary or Personal Information available to any unauthorized person or entity or use it for your own personal benefit. Lifetouch Proprietary and Personal Information may be disclosed only to Lifetouch employees who need to know it and who have signed a confidentiality agreement. Lifetouch Proprietary and Personal Information may only be used as required to carry out your employment duties and for no other purposes whatsoever. You agree to follow all Company safeguards and procedures to protect Lifetouch Proprietary and Personal Information from unauthorized access or disclosure.

    e. **No Solicitation of Employees**. During your employment by Lifetouch and for a period of eighteen (18) months immediately following termination of your employment, regardless of the reason, timing or party who initiates termination of employment, you promise and agree not to, directly or indirectly, either for yourself or any other person or entity, attempt to or actually solicit, encourage or hire any Lifetouch employee to work for a competing business or otherwise induce any

Lifetouch employee to terminate their employment with Lifetouch. For the purpose of this Agreement, a competing business will mean the business of soliciting, marketing, merchandising, promoting, and/or providing professional daycare and pre-school, student, school activity, memory/yearbook or related photographs, products or services or non-school sports and league, class reunion, prom and dance photographs, identification cards, related products or services and memory/yearbooks.

f.   **No Solicitation of Customers or Potential Customers**. During your employment by Lifetouch and for a period of eighteen (18) months immediately following termination of your employment with Lifetouch, regardless of the reason, timing or party who initiates termination of employment, you promise and agree not to directly or indirectly, either for yourself or for any other person or entity, attempt to or actually call on, solicit or make sales to any Lifetouch customers or potential customers that you have called on at any time the 36 month period immediately preceding termination of your employment with Lifetouch or that employees working under your supervision have called on at any time during the 36 month period immediately preceding termination of your employment with Lifetouch for the purpose of providing products or services that are competitive with the products or services of Lifetouch.

g.   **No Unfair Competition**. You agree that the unauthorized use, disclosure or sale of Lifetouch Proprietary Information is unfair competition. You also agree that unauthorized solicitation of Lifetouch employees and/or Lifetouch customers and/or any actions which disrupt Lifetouch business and its relationship with employees or customers during your employment and for eighteen (18) months following termination of your employment is unfair competition. You promise and agree not to engage in unfair competition with Lifetouch.

9.   **Termination of Employment**. Your employment with Lifetouch is at-will and either you or Lifetouch may terminate employment at any time for any reason, with or without cause and with or without notice. The at-will nature of your employment cannot be changed except in a written agreement signed by you and an officer of Lifetouch, stating expressly that the at-will status of your employment is changed.

10.   **Return of Property**. Upon termination of your employment for any reason, you agree to promptly deliver to Lifetouch all Lifetouch Property. "Lifetouch Property" includes all property used in connection with the business of the Company including but not limited to, Proprietary Information, Personal Information, Company Owned Materials, merchandise, proceeds of Lifetouch business, all business forms, calendars, stationary and materials containing Personal and Proprietary Information, and all copies, summaries or compilations in any form.

11.   **Injunctive Relief**. You acknowledge and agree that any breach of this Agreement by you will cause Lifetouch irreparable injury for which there is not an adequate remedy at law. Therefore, you expressly agree that Lifetouch is entitled to injunctive relief in addition to any other remedies available to it in order to prevent damages resulting from a breach of this Agreement.

12.   **Accounting/Return of Profits**. You acknowledge and agree that any breach of this Agreement will result in damage to Lifetouch which will be difficult to precisely ascertain. Therefore, you agree to provide Lifetouch with a monthly accounting of all sales made by you directly or indirectly in violation of this Agreement and to pay Lifetouch, on a monthly basis, all profits earned by you or your new employer as a result of your actions in the event of a breach.

13.   **Portrait Release**. As a Lifetouch employee, you may be photographed or recorded for use in promotional and other materials. You irrevocably authorize Lifetouch, its affiliated companies, assigns and licensees ("Companies") to reproduce, display, publish, distribute, transmit and otherwise use your image and/or voice, both during and after your employment ends in whole, in part or in composite, with or without

your name, in any media to promote Lifetouch's business without reservation and you release the Companies from any claims relating thereto.

14.    **Severability**.  You agree that in the event any provision of this Agreement is found to be invalid, it is considered severable and will not invalidate, hinder or impair the binding nature and effect of any other paragraph or provision in the Agreement. You and Lifetouch agree that any court of competent jurisdiction may modify any unlawful provision of this Agreement in order to make the provision valid, reasonable and enforceable.

15.    **Nondisparagement.**  You agree that at all times during and after your employment with Lifetouch you will not speak in a derogatory or defamatory way about Lifetouch or Lifetouch management.

16.    **Prior Agreements and Modifications**.  This Agreement expressly supersedes any previous written or oral agreements between you and Lifetouch relating to employment, but does not eliminate any outstanding indebtedness. It represents the complete understanding between you and Lifetouch and may only be modified by a written agreement signed by you and an officer of Lifetouch.

17.    **Successors and Assigns**. This Agreement is binding upon and enforceable by Lifetouch and its successors and assigns.  This Agreement is binding upon you, and is personal to you and may not be assigned to any other person or entity.

18.    **Survival**. The terms of paragraphs 8, 10, 11, 12, 13 and 15 will survive the termination of your employment by Lifetouch for whatever reason and remain in full force and effect.

LIFETOUCH NATIONAL
SCHOOL STUDIOS INC.

By: _____
Title: _____
Date: _____7/20/10____

EMPLOYEE

Printed Name: _____Debra B. Cohen____
Date: ____7/16/10____

**EXHIBIT A**
**SECONDARY YEARBOOK SALES REPRESENTATIVE**
**COMPENSATION EXHIBIT**
**Debra Cohen**

## I.   DEFINITIONS

Unless otherwise defined below, capitalized terms in this Exhibit have the same meaning as defined in the Sales Representative Employment Agreement (the "Agreement") between you and Lifetouch.

**Gross Commissions** are calculated based on (a) yearbooks sold by you during the Fiscal Year applying the applicable publishing year's yearbook pricing tools, e.g. Volumes Yearbook Pricing Tool and State of Create Electronic Pricing Grid, and (b) commercial printing sales sold by you in excess of the price quoted from the Lifetouch commercial business group as shown on the books and records of Lifetouch..

**Customer Incentives** are expenses not included in the Yearbook Pricing Tool or Electronic Pricing Grid that are incurred on behalf of the customer for e.g. computers, cameras, software, hardware, workshop fees and other expenditures as shown on the books and records of Lifetouch.

**Net Commissions** are Gross Commissions minus Customer Incentives and third party collection fees.

**Earned Commissions** are Net Commissions multiplied by the Sales Representative Commission Rate in effect from time to time, reduced by Base Salary. Commissions are not earned until the yearbooks are delivered and the invoice has been paid.

**Advanced Commissions or Commission Advances** are an amount advanced against your forecasted Earned Commissions for the Fiscal Year. Advanced Commissions may be paid to you bi-weekly based on Earned Commission forecasts recalculated as of June 30, December 31 and March 31 each Fiscal Year and based on a percentage between 60% and 85% of the prior fiscal year collections (e.g. 100% minus FY10 Balance/FY10 Sales as shown on the Sales Report – NEW in Field Inquiry). In the Company's discretion, the percentage may be temporarily increased.

**Sales Representative Commission Rate** is the rate applied to Net Commissions as determined by the Company from time to time.

**Base Salary** is the amount agreed to between you and Lifetouch each fiscal year to be paid to you in bi-weekly installments. Base Salary may be modified based on your sales performance and business conditions but in no event will Base Salary be less than the amount required to be paid by applicable law to exempt employees.

**Fiscal Year** means Lifetouch's fiscal year, which until changed, begins on July 1 and ends on June 30.

## II.   COMPENSATION

Your compensation consists entirely of your Base Salary and Earned Commissions. Lifetouch may change the rates at which Commissions may be earned and the make up of Customer Incentives at any time in its sole discretion. Changes will be announced in advance of the effective date.

As of the Effective Date, you will be paid a Base Salary in the amount of $36,000 per Fiscal Year, payable in 26 bi-weekly installments.

Until modified, your Sales Representative Commission Rate is 90%.

In addition to Base Salary, you will be paid Subsidized Commissions in the annual amount of $24,000.00 for FY11, and in the discretion of the Company for subsequent fiscal years, paid in bi-weekly installments.   Subsidized Commissions will reduce your Earned Commissions but Subsidized Commissions paid in excess of Earned Commissions will not be carried forward to the subsequent Fiscal Year.

Your Commission will be calculated as follows:

|  | Gross Commissions (TPS Acct #85160) |
|---|---|
| Reduced by | (Customer Incentives) (TPS Acct #87300-500) |
| = | Net Commissions |
| Multiplied by | Sales Representative Commission Rate |
| Reduced by | (Base Salary) |
| = | Earned Commissions |
| Reduced by | (Advanced Commissions) |
|  | (Subsidized Commissions**) |
| = | Fiscal Year Commission Settlement |

** If Fiscal Year Commission Settlement is a negative, but not in excess of Subsidized Commissions, no debit carry over will occur.

Commissions are subject to final reconciliation by Lifetouch.  You may calculate Commission status on an interim, unaudited basis through the monthly territory profitability statement (TPS) by reference to the TPS account shown above.

Lifetouch, at its option, may pay you Advanced Commissions, or otherwise advance cash to you in the amounts and at the times as you and Lifetouch agree based on your forecasted annual Earned Commissions.  During the annual budget process the amount of any Advanced Commissions will be established.  The amount of your Advanced Commissions may be reduced or increased during the Fiscal Year, depending on forecasted Earned Commissions.  Advanced Commissions paid to you or on your behalf will be applied against actual Earned Commissions and may be reduced and/or offset by any other amounts paid to you or on your behalf.

Special, additional bonus or incentive plans may be announced by the Company from time to time.

June 30 is the end of the Company's fiscal year and is the date that Lifetouch will calculate and reconcile Earned Commissions and Advanced Commissions for the completed Fiscal Year (Settlement Date).  Settlement Commissions owing will be paid within 45 days following the Settlement Date. If you are in a debit position, the excess Advanced Commissions against Earned Commissions must be repaid by reducing future Commission Advances, by offsetting such amounts against Commissions to be earned or otherwise reimbursed to Lifetouch upon Lifetouch's written demand.

2

If your employment as a Secondary Yearbook Representative ends prior to the Fiscal Year end, for whatever reason, whether by you or by Lifetouch, you will be paid for Earned Commissions as your last day of employment.

In the event of any dispute, Lifetouch's reports as produced in the ordinary course of business, including without limitation the Commission Reports, are determinative.

## III.   EXPENSES

You will be provided with a car allowance in the amount of $4,800 per Fiscal Year, payable in substantially equal bi-weekly installments.

In addition to Base Salary, Commissions and the car allowance, you will be eligible to charge on a Company P-card receipted eligible and reasonable business expenses, other than gas, oil and other auto expenses, incurred in the ordinary course of business based on company expense reimbursement policies in effect from time to time. Your eligible expense budget will be established by you and the Company each Fiscal Year. Receipts must be in a form reasonably satisfactory to Lifetouch and in compliance with applicable requirements of the taxing authorities.

## IV.   OTHER

Compensation and the car allowance will be reduced by applicable payroll taxes and other authorized deductions. Compensation and sales expectations will be reviewed on an annual basis. The Company reserves the right to change or amend this Exhibit from time to time as business conditions warrant.

You will be entitled to participate in the fringe benefit and employee benefit plans that Lifetouch maintains for employees in comparable positions in accordance with your eligibility under the terms of those plans as in effect from time to time. The Company reserves the right to alter, amend or modify its benefit plans at any time in its sole discretion.

**Effective Date of this Exhibit A:** July 1, 2010. Business that delivers before June 30, 2010 will not be subject to the terms of this Exhibit ("F10 Business"). The F10 compensation plan continues to apply to F10 Business.

LIFETOUCH NATIONAL SCHOOL
STUDIOS INC.                                      EMPLOYEE

By _____           Printed Name _Debra B. Cohen_
Title: _____

Date ___7/20/10___                           Date ___7/16/10___

S:\forms\lnss\yearbooks\ yearbook sales rep comp exhibit 5-21-10 marked

3

# Exhibit 4

**LIFETOUCH NATIONAL SCHOOL STUDIOS INC.**
**SALES PROFESSIONAL EMPLOYMENT AGREEMENT**

This Sales Professional Agreement ("Agreement") is entered into between Lifetouch National School Studios Inc., a Minnesota Corporation ("Lifetouch" or "Company") and Alex Wilson ("Employee" or "you").  The effective date of this Agreement is the date of the Employee's signature. ("Effective Date").

In consideration of Employee's (1) employment with Lifetouch, (2) annual salary and/or incentive earning opportunities, (3) access to technical knowledge, specialized equipment, training and sales techniques, and (4) access to the Company's Confidential Information and Customers (as defined below), Employee agrees as follows:

1.      **Duty of Loyalty.**  While an employee of Lifetouch, you are expected to perform your duties and conduct Lifetouch business in a lawful and professional manner in the best interests of Lifetouch.  During employment, you will devote full working time and attention exclusively to your responsibilities as an employee and will not provide services or products of any kind or engage in any business activity that will interfere with your duty of loyalty to Lifetouch.

2.      **Compensation.** You will be paid for services as described on the attached Exhibit A, as modified from time to time.

3.      **Equipment.** Lifetouch will provide equipment and materials for you to use to perform job duties for Lifetouch.  Lifetouch equipment and materials (both referred to as "Company Owned Materials") are to be used exclusively for Lifetouch business and according to Lifetouch's set up and operating procedures.  All repairs, alterations and modifications to Company Owned Materials must be authorized in advance by your manager and performed only by authorized Lifetouch specialists. You understand and agree that Company Owned Materials and data, including images saved on or generated from the Company Owned Materials ("Data") are the sole and exclusive property of Lifetouch.  You agree to safeguard Company Owned Materials and Data, keeping them secure from access and use by unauthorized persons, damage and theft.  You are responsible for the condition of the Company Owned Materials, except for normal wear and tear, and for damages caused by any unauthorized use or loss.  You agree to immediately report any loss or theft of Company Owned Materials or Data and assist in promptly filing a police report. Lifetouch will maintain an inventory of the Company Owned Materials under your control.  This inventory will be conclusive and binding upon you and Lifetouch.  You agree to immediately deliver to Lifetouch, upon written request, all of the Company Owned Materials provided to you.

4.      **Banking and Sales Proceeds.**  All sales proceeds received by you must be immediately deposited in a Lifetouch designated bank account or forwarded to a location directed by the Lifetouch Finance Department.  You will not, under any circumstances, commingle sales proceeds with personal funds, borrow from or deposit sales proceeds in an account other than a Lifetouch authorized bank account.

5.     **Authority to Bind the Company.** You are not authorized to:  (1) sign a lease or purchase equipment or materials in the name of Lifetouch without the prior written approval of an officer of Lifetouch; and/or (2) acknowledge or accept any summons, complaint or other legal service of process on behalf of Lifetouch.  All sales contracts are subject to approval by Lifetouch.   All telephone numbers, website addresses, email addresses, domain names, fax numbers and data lines used in conducting Lifetouch business must be in Lifetouch's name and under Lifetouch's control except as otherwise permitted by the Lifetouch Electronic Communications and Systems Policy.

6.     **Protection of Confidential, Proprietary and Trade Secret Information.** For many years, Lifetouch has made significant investments to establish a successful photography business, famous brand name, and valuable customer and employee base. Lifetouch's Confidential Information (as defined below) has independent economic value to Lifetouch because it is not generally known to the public.  As a result, it is imperative to the continued success of Lifetouch that Confidential Information is protected and kept confidential.

a.     **Definition of Confidential Information.** Confidential Information ("Confidential Information") means both Proprietary Information and Personal Information.

b.     **Definition of Proprietary Information.**   Lifetouch Proprietary Information ("Proprietary Information") means all nonpublic information (in tangible or intangible form) arising from, relating to or in the possession of Lifetouch including but not limited to: technical information such as trade secrets, trade secret processes or devices, know-how, technology, data, software, formulas, inventions (whether or not patentable or copyrighted), specifications and characteristics of products or services planned or being developed, and research subjects, methods and results; business information such as costs, profits, pricing, commissions, scheduling, training, policies, markets, sales, suppliers, customers, contracts, product plans, and marketing plans or strategies, financial reports and projections, production methods, techniques and volume; human resources information such as employment policies and practices, personnel, information and files, compensation and employee benefits; and other information not generally disclosed by the Company to the public.

c.     **Definition of Personal Information.** Personal Information ("Personal Information") includes any individually identifiable information provided to Lifetouch by customers, potential customers and employees and third parties in confidence, which may include but is not limited to personally identifiable information or transactional data such as credit card or bank account information.

d.     **Ownership.** Lifetouch Proprietary Information is owned by Lifetouch.

e.     **Maintain Confidentiality.** At all times during and after your employment with Lifetouch, you will maintain all Lifetouch Confidential Information in the strictest confidence and will not, directly or indirectly, disclose or make Lifetouch Confidential Information available to any unauthorized person or entity or use it for your own personal benefit. Lifetouch Confidential Information may be disclosed only to Lifetouch employees who need to know it and who have signed a confidentiality agreement. Lifetouch Confidential Information may only be used as required to carry out your employment duties

and for no other purposes whatsoever.  You agree to follow all Company safeguards and procedures to protect Lifetouch Confidential Information from unauthorized access or disclosure.

       f.    **No Solicitation of Lifetouch Employees.**  During your employment with Lifetouch and for a period of eighteen (18) months following termination of your employment with Lifetouch for any reason, you will not, directly or indirectly, either as an individual for your own account or on behalf of any other person or persons, corporation, partnership or other entity: (i) encourage or solicit any employee, consultant or representative who worked for Lifetouch at any time within the last six (6) months of the date of your termination to leave Lifetouch for any reason, nor will you solicit such person's services; (ii) assist any other person or entity in such encouragement or solicitation; or, (iii) otherwise interfere with the relationship any employee, consultant or representative has with Lifetouch.

g.    **No Solicitation of Customers.**  During your employment with Lifetouch and for a period of eighteen (18) months following termination of your employment with Lifetouch for any reason, you will not: (i) solicit the business or patronage of any Customer  for any Competing Business; (ii) divert, entice, or otherwise take away from Lifetouch the business or patronage of any Customer, or attempt to do so; or, (iii) solicit or induce any Customer to terminate or reduce its relationship with Lifetouch. "Customer" means any prospective, present or past customer, vendor, supplier or business partner of Lifetouch with whom you, or anyone under your direct control or supervision, had contact with as part of your job responsibilities with Lifetouch at any time during the last two (2) years of your employment with Lifetouch. "Competing Business" means the business of soliciting, marketing, merchandising, promoting, and/or providing professional daycare and pre-school, student, staff and administration, school activity, sports, leagues and associations, class reunion, prom and dance, identification cards, memory book and yearbook photography and photography-related, products or services.

h.    **No Unfair Competition**.  You agree that the unauthorized use, disclosure or sale of Lifetouch Confidential Information is unfair competition.  You also agree that unauthorized solicitation of Lifetouch employees and/or Lifetouch customers during your employment and following termination of your employment is unfair competition. You promise and agree not to engage in unfair competition with Lifetouch.

i.    **Former Employers' Confidential Information**.  You will not improperly use or disclose to any Lifetouch employee, agent or contractor any confidential or proprietary information (including the substance of any unpublished patent applications or invention disclosures) belonging to any of your former employers or any other person or entity to which you owe a duty of non-disclosure.

       7.    **Return of Property.**  Upon request of Lifetouch or upon termination of your employment for any reason, you agree to promptly deliver to Lifetouch all Lifetouch Property. "Lifetouch Property" includes all property used in connection with the business of Lifetouch including but not limited to, Confidential Information, Company Owned Materials and Data, merchandise, proceeds of Lifetouch business, all business forms, calendars, stationary and materials containing

Personal and Proprietary Information, and all copies, summaries or compilations in any form including electronic, paper or other media in your possession or under your control in any location, including on personal device(s).

8.     **Remedies.** You acknowledge and agree that any breach of this Agreement by you will cause Lifetouch irreparable injury for which there is not an adequate remedy at law. Therefore, you expressly agree that Lifetouch is entitled to injunctive relief in addition to any other remedies available to it in order to prevent damages resulting from a breach of this Agreement. You agree that in the event you are found to have breached (or threatened to breach) any provision of this Agreement, you will be liable to Lifetouch for reasonable attorneys' fees and costs incurred in enforcing this Agreement.

9.     **Accounting/Return of Profits.** You acknowledge and agree that any breach of this Agreement will result in damage to Lifetouch which will be difficult to precisely ascertain. Therefore, you agree to provide Lifetouch with a monthly accounting of all sales made by you directly or indirectly in violation of this Agreement and to pay Lifetouch, on a monthly basis, all profits earned by you or your new employer in the event of a breach.

10.     **Portrait Release.** As a Lifetouch employee, you may be photographed or recorded for use in promotional and other materials.  You irrevocably authorize Lifetouch, its affiliated companies, agents, assigns and licensees ("Companies") to reproduce, display, publish, distribute, transmit and otherwise use and publish your image and/or voice or other recording, both during and after your employment ends in whole, in part or in composite, with or without your name, in any media to promote the Companies' business without reservation and you release the Companies from any claims relating thereto.

11.     **Severability.** You agree that in the event any provision of this Agreement is found to be invalid, it is considered severable and will not invalidate, hinder or impair the binding nature and effect of any other paragraph or provision in the Agreement. You and Lifetouch agree that any court of competent jurisdiction may modify any unlawful provision of this Agreement in order to make the provision valid, reasonable and enforceable.

12.     **Entire Agreement and Modifications.** This Agreement and Exhibit A attached hereto expressly supersedes any previous written or oral agreements between you and Lifetouch relating to employment, but does not eliminate any outstanding indebtedness. It represents the complete understanding between you and Lifetouch and may only be modified by a written agreement signed by you and an Officer of Lifetouch. No oral waiver, amendment or modification shall be effective under any circumstances whatsoever.

13.     **Successors and Assigns.** This Agreement is binding upon and enforceable by Lifetouch and its successors and assigns. This Agreement is binding upon you, and is personal to you and may not be assigned to any other person or entity.

14. **Governing Law and Venue.** The validity, enforceability, construction and interpretation of this Agreement are governed by the laws of the State of Minnesota. In the event a dispute arises regarding this Agreement, the Parties will submit to the jurisdiction of the federal and state courts of the State of Minnesota. You expressly waive any objection as to jurisdiction or venue in the state and federal courts located in Minnesota.

15. **Survival.** The terms of paragraphs 6, 7, 8, 10, 11, 13 and 14 will survive the termination of your employment by Lifetouch for whatever reason and remain in full force and effect.

16. **At-Will Employment.** THIS AGREEMENT IS NOT A GUARANTEE OR PROMISE OF EMPLOYMENT FOR A DEFINITE PERIOD OF TIME, AND YOUR EMPLOYMENT WITH LIFETOUCH IS "AT-WILL" AND MAY BE TERMINATED BY EITHER PARTY AT ANY TIME, WITH OR WITHOUT CAUSE AND WITH OR WITHOUT NOTICE.

By signing this Agreement, you attest that you have carefully read and considered all provisions of this Agreement and acknowledge that all of the obligations set forth herein are fair and reasonably required to protect Lifetouch's interests.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date of the Employee's signature below.

LIFETOUCH NATIONAL SCHOOL STUDIOS INC.          EMPLOYEE

By: _____          By: _____

Title: _____          Printed Name: Alex Wilson

Date: 6/23/15          Date: 4/17/15

### EXHIBIT A
### LIFETOUCH NATIONAL SCHOOL STUDIOS INC.
### SALES PROFESSIONAL EMPLOYMENT AGREEMENT
### Compensation Plan for Fiscal Year 2016
### Alex Wilson

### I.    DEFINITIONS

Unless otherwise defined below, capitalized terms in this Exhibit have the same meaning as defined in the Sales Representative Employment Agreement (the "Agreement") between you and Lifetouch.

**Yearbook Gross Commissions** are calculated based on (a) yearbooks sold by you during the Fiscal Year applying the applicable publishing year's yearbook pricing tools, e.g. Volumes Yearbook Pricing Tool and State of Create Electronic Pricing Grid, and (b) commercial printing sales sold by you in excess of the price quoted from the Lifetouch commercial business group as shown on the books and records of Lifetouch.

**Yearbook Customer Incentives** are expenses not included in the Yearbook Pricing Tool or Electronic Pricing Grid that are incurred on behalf of the customer for e.g. computers, cameras, software, hardware, candid photography services, referral bonuses, workshop fees and other expenditures as shown on the books and records of Lifetouch.

**Yearbook Net Commissions** are Gross Commissions minus Customer Incentives and third party collection fees.

**Sales Professional Commission Rate** is the commission rate applied to Portrait Net Sales or Yearbook Net Commissions to calculate your compensation for program sales as established by the Company.

| | |
|---|---|
| Yearbooks from HN in 2015 | **90.00%** |
| Yearbooks new 2016 and beyond | **70.00%** |

**Earned Commission** is Portrait Net Sales and Yearbook Net Commission multiplied by Sales Professional Commission Rate for the accounts assigned to you.  Commission is considered earned when yearbooks are delivered and the invoice has been paid in full and/or all portrait sales and services are delivered and all sales receipts have been deposited and commissions paid to the school.

If a contract or event is cancelled prior to execution, any commission previously paid to you on that particular job will be adjusted against future unearned commissions.

**Advanced Commission** is an amount paid to you in regular bi-weekly installments in advance based upon your forecasted or expected commissions for the Fiscal Year.  Advanced Commission amounts are based on a percentage of forecasted or expected sales and prior fiscal year collections by you in the prior Fiscal Year.   During the annual Territory budget process the amount of Advanced Commission will be established.   The amount of your Advanced Commission payments may be adjusted during the Fiscal Year, depending on actual and forecasted commission.    Your current Advanced Commission rate is **85%**.

**Settlement** is the amount of earned commission in excess of the advanced Commission that is paid at the end of each season.

**Fiscal Year** means Lifetouch's Fiscal Year which begins on July 1 and ends on June 30.

## II.  COMPENSATION

You are classified as an exempt outside sales representative and, your compensation consists entirely of **Earned Commission.** Lifetouch reserves the right to modify commission rate at any time at its sole discretion.  Changes to commission rates will be announced in advance of the effective date.  Special bonus or incentive plans may be announced by the Company from time to time as well.

As of the effective date, you will be paid Advanced Commission as outlined below, payable in 26 bi-weekly installments less applicable payroll taxes and other authorized deductions. Expected total compensation is calculated based on your target Net Commission multiplied by your Sales Professional Commission Rate.

Expected total compensation is calculated based on your target Yearbook Net Commissions multiplied by your Sales Professional Commission Rate.

|  | Yearbook Net Commissions |
|---|---|
| Multiplied by (X) | Sales Professional Commission rate |
| = | **Expected Total Commission** |
| Multiplied by (X) | Advanced Commission Rate |
| = | **Expected Annual Advanced Commission** |
| Divided by (/) | 26 Pay Periods |
| = | **Bi-Weekly Advanced Commission** |

Your Year End Commission Settlement will be calculated as follows:

|  | Gross Commissions |
|---|---|
| Reduced by (-) | (Customer Incentives) |
| = | **Yearbook Net Commissions** |
| Multiplied by (X) | Sales Professional Commission Rate |
| = | **Earned Commission** |
| Reduced by (-) | (Advanced Commission Including Investment Commission) |
| = | **Fiscal Year Settlement** |

Commission calculations are subject to final reconciliation by Lifetouch.  You may calculate Commission status on an interim, unaudited basis from the Lifetouch reporting systems which can be reviewed with your Territory Manager.

June 30 is the end of the Company's Fiscal Year and once company information is verified and commissions are reasonably calculable, Lifetouch will reconcile Earned Commission against Advanced Commission for the completed Fiscal Year; typically by August 15th.  If you are in a debit position at a commission settlement date, the excess Advanced Commission above Earned Commission must be reconciled by reducing future Commission Advances or otherwise repaid to Lifetouch upon written demand.   By signing this Exhibit, you agree that if you are in a debit position and your employment

ends you authorize Lifetouch to withhold all excess advance commission paid to you from your final paycheck or any unreimbursed expense payments owed to you by Lifetouch.

In the event of any dispute, Lifetouch's reports as produced in the ordinary course of business, including without limitation the Commission Reports shall be determinative.

### III.    EXPENSES

You will be provided with an automobile allowance in the amount of $6,500 to include toll expenses per Fiscal Year, payable in substantially equal bi-weekly installments.

You will be reimbursed for actual expenses incurred in the ordinary course of business based on company expense reimbursement policies and subject to approval by your manager. Receipts must be in a form reasonably satisfactory to Lifetouch and in compliance with applicable requirements of tax authorities. Expense reimbursement is not considered taxable income to you and is not reflected in your annual W2 wages.

### IV.    OTHER

The compensation described above is contingent upon meeting specific performance expectations and continuous employment through the periods specified.

If your employment as a Sales Professional ends prior to the end of Fiscal Year, for any  reason, whether by you or by Lifetouch, you will be paid your Earned Commission as of your last day of employment when results are available and the commission is reasonably calculable.

The performance period for this compensation plan is Fiscal Year 2016 (July 1, 2015 – June 30, 2016). Compensation and sales expectations will be reviewed on a semi-annual basis. The company retains the right to automatically renew or to change the provisions of this agreement upon reasonable notice to you.

*This Exhibit amends only Exhibit A of the Sales Employment Agreement, which otherwise remains in full force and effect.*

By signing below, I acknowledge that:

   a.  I have read, understand and agree to the terms of this Exhibit A
   b.  I am aware that Lifetouch reserves the right to modify commission rates at any time at its sole discretion.
   c.  I agree that I will be paid advance commission and if my employment ends I authorize Lifetouch the right to recover over-payments of unearned commission paid to me by withholding all monies due to me by Lifetouch. I agree to reimburse Lifetouch in the event that any withholdings are insufficient to cover the overpayments to me through payroll deductions and any other sums owed to me by the company including expense reports.

Employee Signature: _____   Date: _4/17/15_

Manager Signature: _____   Date: _6/23/15_

|  | FORECAST Renewed HN Territory | FORECAST New business | SETTLEMENT |
|---|---|---|---|
| Yearbook Estimated Commission | 165,000 | 10,000 | |
| Actual Year End: Yearbook Commission Released in Per. | | | 165,000 |
| Customer Incentives | 3,000 | - | 3,000 |
| Bad Debt Adjustments | | | |
| Yearbook Net Commission | 162,000 | 10,000 | 162,000 |
| Sales Pro Commission Rate | | | |
| Sales Pro Estimated Commission | $145,800 | $7,000 | 145,800 |
| Advanced Commission Rate | 85% | | |
| Sales Pro Advanced Commission | $123,930 | | 117,000 |
| # of pay periods in a year | 26 | | |
| Paid on bi-weekly check | $4,767 | | |
| Year-End Settlement to be Paid | | | 28,800 |

*Addendum to Exhibit A

# Exhibit 5

2/7/2019                                    FedEx Ship Manager - Print Your Label(s)

**FedEx**      Shipment Receipt

**Address Information**
Ship to:                        Ship from:
Attn. Legal Department          Sara Motzko
Walsworth Yearbooks             Lifetouch Inc.
306 N Kansas Avenue             11000 Viking Drive 400 West

MARCELINE, MO                   Eden Prairie, MN
64658                           55344
US                              US
800-369-2646                    9528264942

**Shipment Information:**
Tracking no.: 774419447455
Ship date: 02/07/2019
Estimated shipping charges: 9.56 USD

**Package Information**
Pricing option: FedEx Standard Rate
Service type: FedEx Express Saver
Package type: FedEx Envelope
Number of packages: 1
Total weight: 0.10  LBS
Declared Value: 0.00  USD
Special Services:
Pickup/Drop-off: Drop off package at FedEx location

**Billing Information:**
Bill transportation to: LNSS-397
Your reference:  A. Wilson
P.O. no.:
Invoice no.:
Department no.:


   Thank you for shipping online with FedEx ShipManager at fedex.com.

**Please Note**
FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.



Rex L. Buxton
**Associate General Counsel**

Tel 952.826.5645
Fax 952.221.3278
rbuxton@lifetouch.com

February 7, 2019

**VIA FEDERAL EXPRESS**

Walsworth Yearbooks
306 N Kansas Avenue
Marceline, MO 64658

      Re: Lifetouch National School Studios, Inc. / Alex Wilson

Dear Sir or Madam:

This office serves as general counsel to Lifetouch National School Studios Inc. Enclosed please find a copy of a letter sent to Walsworth Yearbooks employee Alex Wilson regarding the Lifetouch National School Studios Inc. Sales Professional Employment Agreement that he signed.

We are providing this letter to you to ensure that your company is aware of the terms and conditions of Mr. Wilson's Employment Agreement with Lifetouch.

Lifetouch will monitor this situation very carefully and to the extent that Mr. Wilson breaches his Agreement and causes damage to Lifetouch, we will pursue all available legal remedies against Mr. Wilson and Walsworth Yearbooks.

If you would like to discuss this matter please feel free to contact me directly. My number is (952) 826-5645.

Thank you for your attention to this matter.

              Very truly yours,

              Rex Buxton

M:\Department Shares\Legal Department\Employee Relations\Non-Compete\Schools (LNSS)\Wilson, Alex (Feb 2019)\2.7.19 Ltr to Walsworth YB.docx



Rex L. Buxton
Associate General Counsel

Tel 952.826.5645
Fax 952.221.3278
rbuxton@lifetouch.com

February 7, 2019

**VIA FEDERAL EXPRESS**

Alex Wilson
59 High Street
Amesbury, MA 01913

Dear Mr. Wilson:

This office serves as general counsel to Lifetouch National School Studios Inc. ("Lifetouch" or "Company"), your prior employer. As you know, your employment with Lifetouch ended October 16, 2017. It has come to our attention that you may be in violation of your Sales Professional Employment Agreement ("Agreement") by soliciting former accounts that you called on/serviced within your Lifetouch sales territory and assisting your current employer in obtaining such accounts.

Lifetouch hereby demands you cease and desist in all activities in violation of your Agreement. Attached for your information is a copy of the Agreement that you signed April 17, 2015.

Please respond to this letter on or before **Thursday, February 14, 2019** confirming that you will abide by the conditions of your Employment Agreement.

Lifetouch will continue to monitor your activities and to the extent that you breach your Agreement and cause damage to Lifetouch the Company will pursue all available legal remedies against you without further notice.

By copy of this letter we are providing a copy of your Agreement to your employer.

Very truly yours,

Rex Buxton

cc:  Walsworth Yearbooks

M:\Department Shares\Legal Department\Employee Relations\Non-Compete\Schools (LNSS)\Wilson, Alex (Feb 2019)\2.7.19 Ltr to Wilson.doc

## LIFETOUCH NATIONAL SCHOOL STUDIOS INC.
### SALES PROFESSIONAL EMPLOYMENT AGREEMENT

This Sales Professional Agreement ("Agreement") is entered into between Lifetouch National School Studios Inc., a Minnesota Corporation ("Lifetouch" or "Company") and Alex Wilson ("Employee" or "you"). The effective date of this Agreement is the date of the Employee's signature. ("Effective Date").

In consideration of Employee's (1) employment with Lifetouch, (2) annual salary and/or incentive earning opportunities, (3) access to technical knowledge, specialized equipment, training and sales techniques, and (4) access to the Company's Confidential Information and Customers (as defined below), Employee agrees as follows:

1.      **Duty of Loyalty.** While an employee of Lifetouch, you are expected to perform your duties and conduct Lifetouch business in a lawful and professional manner in the best interests of Lifetouch. During employment, you will devote full working time and attention exclusively to your responsibilities as an employee and will not provide services or products of any kind or engage in any business activity that will interfere with your duty of loyalty to Lifetouch.

2.      **Compensation.** You will be paid for services as described on the attached Exhibit A, as modified from time to time.

3.      **Equipment.** Lifetouch will provide equipment and materials for you to use to perform job duties for Lifetouch. Lifetouch equipment and materials (both referred to as "Company Owned Materials") are to be used exclusively for Lifetouch business and according to Lifetouch's set up and operating procedures. All repairs, alterations and modifications to Company Owned Materials must be authorized in advance by your manager and performed only by authorized Lifetouch specialists. You understand and agree that Company Owned Materials and data, including images saved on or generated from the Company Owned Materials ("Data") are the sole and exclusive property of Lifetouch. You agree to safeguard Company Owned Materials and Data, keeping them secure from access and use by unauthorized persons, damage and theft. You are responsible for the condition of the Company Owned Materials, except for normal wear and tear, and for damages caused by any unauthorized use or loss. You agree to immediately report any loss or theft of Company Owned Materials or Data and assist in promptly filing a police report. Lifetouch will maintain an inventory of the Company Owned Materials under your control. This inventory will be conclusive and binding upon you and Lifetouch. You agree to immediately deliver to Lifetouch, upon written request, all of the Company Owned Materials provided to you.

4.      **Banking and Sales Proceeds.** All sales proceeds received by you must be immediately deposited in a Lifetouch designated bank account or forwarded to a location directed by the Lifetouch Finance Department. You will not, under any circumstances, commingle sales proceeds with personal funds, borrow from or deposit sales proceeds in an account other than a Lifetouch authorized bank account.

5.      **Authority to Bind the Company.** You are not authorized to: (1) sign a lease or purchase equipment or materials in the name of Lifetouch without the prior written approval of an officer of Lifetouch; and/or (2) acknowledge or accept any summons, complaint or other legal service of process on behalf of Lifetouch. All sales contracts are subject to approval by Lifetouch. All telephone numbers, website addresses, email addresses, domain names, fax numbers and data lines used in conducting Lifetouch business must be in Lifetouch's name and under Lifetouch's control except as otherwise permitted by the Lifetouch Electronic Communications and Systems Policy.

6.      **Protection of Confidential, Proprietary and Trade Secret Information.** For many years, Lifetouch has made significant investments to establish a successful photography business, famous brand name, and valuable customer and employee base. Lifetouch's Confidential Information (as defined below) has independent economic value to Lifetouch because it is not generally known to the public. As a result, it is imperative to the continued success of Lifetouch that Confidential Information is protected and kept confidential.

a.      **Definition of Confidential Information.** Confidential Information ("Confidential Information") means both Proprietary Information and Personal Information.

b.      **Definition of Proprietary Information.** Lifetouch Proprietary Information ("Proprietary Information") means all nonpublic information (in tangible or intangible form) arising from, relating to or in the possession of Lifetouch including but not limited to: technical information such as trade secrets, trade secret processes or devices, know-how, technology, data, software, formulas, inventions (whether or not patentable or copyrighted), specifications and characteristics of products or services planned or being developed, and research subjects, methods and results; business information such as costs, profits, pricing, commissions, scheduling, training, policies, markets, sales, suppliers, customers, contracts, product plans, and marketing plans or strategies, financial reports and projections, production methods, techniques and volume; human resources information such as employment policies and practices, personnel, information and files, compensation and employee benefits; and other information not generally disclosed by the Company to the public.

c.      **Definition of Personal Information.** Personal Information ("Personal Information") includes any individually identifiable information provided to Lifetouch by customers, potential customers and employees and third parties in confidence, which may include but is not limited to personally identifiable information or transactional data such as credit card or bank account information.

d.      **Ownership.** Lifetouch Proprietary Information is owned by Lifetouch.

e.      **Maintain Confidentiality.** At all times during and after your employment with Lifetouch, you will maintain all Lifetouch Confidential Information in the strictest confidence and will not, directly or indirectly, disclose or make Lifetouch Confidential Information available to any unauthorized person or entity or use it for your own personal benefit. Lifetouch Confidential Information may be disclosed only to Lifetouch employees who need to know it and who have signed a confidentiality agreement. Lifetouch Confidential Information may only be used as required to carry out your employment duties

and for no other purposes whatsoever.  You agree to follow all Company safeguards and procedures to protect Lifetouch Confidential Information from unauthorized access or disclosure.

        **f.**   **No Solicitation of Lifetouch Employees.**  During your employment with Lifetouch and for a period of eighteen (18) months following termination of your employment with Lifetouch for any reason, you will not, directly or indirectly, either as an individual for your own account or on behalf of any other person or persons, corporation, partnership or other entity: (i) encourage or solicit any employee, consultant or representative who worked for Lifetouch at any time within the last six (6) months of the date of your termination to leave Lifetouch for any reason, nor will you solicit such person's services; (ii) assist any other person or entity in such encouragement or solicitation;  or, (iii) otherwise interfere with the relationship any employee, consultant or representative has with Lifetouch.

**g.**   **No Solicitation of Customers.**  During your employment with Lifetouch and for a period of eighteen (18) months following termination of your employment with Lifetouch for any reason, you will not: (i) solicit the business or patronage of any Customer for any Competing Business; (ii) divert, entice, or otherwise take away from Lifetouch the business or patronage of any Customer, or attempt to do so; or, (iii) solicit or induce any Customer to terminate or reduce its relationship with Lifetouch. "Customer" means any prospective, present or past customer, vendor, supplier or business partner of Lifetouch with whom you, or anyone under your direct control or supervision, had contact with as part of your job responsibilities with Lifetouch at any time during the last two (2) years of your employment with Lifetouch. "Competing Business" means the business of soliciting, marketing, merchandising, promoting, and/or providing professional daycare and pre-school, student, staff and administration, school activity, sports, leagues and associations, class reunion, prom and dance, identification cards, memory book and yearbook photography and photography-related, products or services.

**h.**   **No Unfair Competition.**  You agree that the unauthorized use, disclosure or sale of Lifetouch Confidential Information is unfair competition.  You also agree that unauthorized solicitation of Lifetouch employees and/or Lifetouch customers during your employment and following termination of your employment is unfair competition. You promise and agree not to engage in unfair competition with Lifetouch.

**i.**   **Former Employers' Confidential Information.**  You will not improperly use or disclose to any Lifetouch employee, agent or contractor any confidential or proprietary information (including the substance of any unpublished patent applications or invention disclosures) belonging to any of your former employers or any other person or entity to which you owe a duty of non-disclosure.

        **7.**   **Return of Property.**  Upon request of Lifetouch or upon termination of your employment for any reason, you agree to promptly deliver to Lifetouch all Lifetouch Property. "Lifetouch Property" includes all property used in connection with the business of Lifetouch including but not limited to, Confidential Information, Company Owned Materials and Data, merchandise, proceeds of Lifetouch business, all business forms, calendars, stationary and materials containing

Personal and Proprietary Information, and all copies, summaries or compilations in any form including electronic, paper or other media in your possession or under your control in any location, including on personal device(s).

8.      **Remedies.** You acknowledge and agree that any breach of this Agreement by you will cause Lifetouch irreparable injury for which there is not an adequate remedy at law. Therefore, you expressly agree that Lifetouch is entitled to injunctive relief in addition to any other remedies available to it in order to prevent damages resulting from a breach of this Agreement. You agree that in the event you are found to have breached (or threatened to breach) any provision of this Agreement, you will be liable to Lifetouch for reasonable attorneys' fees and costs incurred in enforcing this Agreement.

9.      **Accounting/Return of Profits.** You acknowledge and agree that any breach of this Agreement will result in damage to Lifetouch which will be difficult to precisely ascertain. Therefore, you agree to provide Lifetouch with a monthly accounting of all sales made by you directly or indirectly in violation of this Agreement and to pay Lifetouch, on a monthly basis, all profits earned by you or your new employer in the event of a breach.

10. ·   **Portrait Release.** As a Lifetouch employee, you may be photographed or recorded for use in promotional and other materials. You irrevocably authorize Lifetouch, its affiliated companies, agents, assigns and licensees ("Companies") to reproduce, display, publish, distribute, transmit and otherwise use and publish your image and/or voice or other recording, both during and after your employment ends in whole, in part or in composite, with or without your name, in any media to promote the Companies' business without reservation and you release the Companies from any claims relating thereto.

11. ·   **Severability.** You agree that in the event any provision of this Agreement is found to be invalid, it is considered severable and will not invalidate, hinder or impair the binding nature and effect of any other paragraph or provision in the Agreement. You and Lifetouch agree that any court of competent jurisdiction may modify any unlawful provision of this Agreement in order to make the provision valid, reasonable and enforceable.

12.     **Entire Agreement and Modifications.** This Agreement and Exhibit A attached hereto expressly supersedes any previous written or oral agreements between you and Lifetouch relating to employment, but does not eliminate any outstanding indebtedness. It represents the complete understanding between you and Lifetouch and may only be modified by a written agreement signed by you and an Officer of Lifetouch. No oral waiver, amendment or modification shall be effective under any circumstances whatsoever.

13.     **Successors and Assigns.** This Agreement is binding upon and enforceable by Lifetouch and its successors and assigns. This Agreement is binding upon you, and is personal to you and may not be assigned to any other person or entity.

14.    **Governing Law and Venue.**   The validity, enforceability, construction and interpretation of this Agreement are governed by the laws of the State of Minnesota. In the event a dispute arises regarding this Agreement, the Parties will submit to the jurisdiction of the federal and state courts of the State of Minnesota. You expressly waive any objection as to jurisdiction or venue in the state and federal courts located in Minnesota.

15.    **Survival.**   The terms of paragraphs 6, 7, 8, 10, 11, 13 and 14 will survive the termination of your employment by Lifetouch for whatever reason and remain in full force and effect.

16.    **At-Will Employment.**   THIS AGREEMENT IS NOT A GUARANTEE OR PROMISE OF EMPLOYMENT FOR A DEFINITE PERIOD OF TIME, AND YOUR EMPLOYMENT WITH LIFETOUCH IS "AT-WILL" AND MAY BE TERMINATED BY EITHER PARTY AT ANY TIME, WITH OR WITHOUT CAUSE AND WITH OR WITHOUT NOTICE.

By signing this Agreement, you attest that you have carefully read and considered all provisions of this Agreement and acknowledge that all of the obligations set forth herein are fair and reasonably required to protect Lifetouch's interests.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date of the Employee's signature below.

LIFETOUCH NATIONAL SCHOOL STUDIOS INC.                    EMPLOYEE

By: _____          By: _____

Title: _____        Printed Name: Alex Wilson

Date: 6/20/15                          Date: 4/17/15

**EXHIBIT A**
**LIFETOUCH NATIONAL SCHOOL STUDIOS INC.**
**SALES PROFESSIONAL EMPLOYMENT AGREEMENT**
**Compensation Plan for Fiscal Year 2016**
**Alex Wilson**

## I.    DEFINITIONS

Unless otherwise defined below, capitalized terms in this Exhibit have the same meaning as defined in the Sales Representative Employment Agreement (the "Agreement") between you and Lifetouch.

**Yearbook Gross Commissions** are calculated based on (a) yearbooks sold by you during the Fiscal Year applying the applicable publishing year's yearbook pricing tools, e.g. Volumes Yearbook Pricing Tool and State of Create Electronic Pricing Grid, and (b) commercial printing sales sold by you in excess of the price quoted from the Lifetouch commercial business group as shown on the books and records of Lifetouch.

**Yearbook Customer Incentives** are expenses not included in the Yearbook Pricing Tool or Electronic Pricing Grid that are incurred on behalf of the customer for e.g. computers, cameras, software, hardware, candid photography services, referral bonuses, workshop fees and other expenditures as shown on the books and records of Lifetouch.

**Yearbook Net Commissions** are Gross Commissions minus Customer Incentives and third party collection fees.

**Sales Professional Commission Rate** is the commission rate applied to Portrait Net Sales or Yearbook Net Commissions to calculate your compensation for program sales as established by the Company.

| | |
|---|---|
| Yearbooks from HN in 2015 | 90.00% |
| Yearbooks new 2016 and beyond | 70.00% |

**Earned Commission** is Portrait Net Sales and Yearbook Net Commission multiplied by Sales Professional Commission Rate for the accounts assigned to you. Commission is considered earned when yearbooks are delivered and the invoice has been paid in full and/or all portrait sales and services are delivered and all sales receipts have been deposited and commissions paid to the school.

If a contract or event is cancelled prior to execution, any commission previously paid to you on that particular job will be adjusted against future unearned commissions.

**Advanced Commission** is an amount paid to you in regular bi-weekly installments in advance based upon your forecasted or expected commissions for the Fiscal Year. Advanced Commission amounts are based on a percentage of forecasted or expected sales and prior fiscal year collections by you in the prior Fiscal Year. During the annual Territory budget process the amount of Advanced Commission will be established. The amount of your Advanced Commission payments may be adjusted during the Fiscal Year, depending on actual and forecasted commission. Your current Advanced Commission rate is 85%.

**Settlement** is the amount of earned commission in excess of the advanced Commission that is paid at the end of each season.

**Fiscal Year** means Lifetouch's Fiscal Year which begins on July 1 and ends on June 30.

## II.  COMPENSATION

You are classified as an exempt outside sales representative and, your compensation consists entirely of Earned Commission. Lifetouch reserves the right to modify commission rate at any time at its sole discretion. Changes to commission rates will be announced in advance of the effective date. Special bonus or incentive plans may be announced by the Company from time to time as well.

As of the effective date, you will be paid Advanced Commission as outlined below, payable in 26 bi-weekly installments less applicable payroll taxes and other authorized deductions. Expected total compensation is calculated based on your target Net Commission multiplied by your Sales Professional Commission Rate.

Expected total compensation is calculated based on your target Yearbook Net Commissions multiplied by your Sales Professional Commission Rate.

|  |  |
|---|---|
|  | **Yearbook Net Commissions** |
| Multiplied by (X) | **Sales Professional Commission rate** |
| = | **Expected Total Commission** |
| Multiplied by (X) | **Advanced Commission Rate** |
| = | **Expected Annual Advanced Commission** |
| Divided by (/) | **26 Pay Periods** |
| = | **Bi-Weekly Advanced Commission** |

Your Year End Commission Settlement will be calculated as follows:

|  |  |
|---|---|
|  | **Gross Commissions** |
| Reduced by (-) | **(Customer Incentives)** |
| = | **Yearbook Net Commissions** |
| Multiplied by (X) | **Sales Professional Commission Rate** |
| = | **Earned Commission** |
| Reduced by (-) | **(Advanced Commission Including Investment Commission)** |
| = | **Fiscal Year Settlement** |

Commission calculations are subject to final reconciliation by Lifetouch.  You may calculate Commission status on an interim, unaudited basis from the Lifetouch reporting systems which can be reviewed with your Territory Manager.

June 30 is the end of the Company's Fiscal Year and once company information is verified and commissions are reasonably calculable, Lifetouch will reconcile Earned Commission against Advanced Commission for the completed Fiscal Year; typically by August 15th.  If you are in a debit position at a commission settlement date, the excess Advanced Commission above Earned Commission must be reconciled by reducing future Commission Advances or otherwise repaid to Lifetouch upon written demand.  By signing this Exhibit, you agree that if you are in a debit position and your employment

ends you authorize Lifetouch to withhold all excess advance commission paid to you from your final paycheck or any unreimbursed expense payments owed to you by Lifetouch.

In the event of any dispute, Lifetouch's reports as produced in the ordinary course of business, including without limitation the Commission Reports shall be determinative.

**III.   EXPENSES**
You will be provided with an automobile allowance in the amount of $6,500 to include toll expenses per Fiscal Year, payable in substantially equal bi-weekly installments.

You will be reimbursed for actual expenses incurred in the ordinary course of business based on company expense reimbursement policies and subject to approval by your manager. Receipts must be in a form reasonably satisfactory to Lifetouch and in compliance with applicable requirements of tax authorities. Expense reimbursement is not considered taxable income to you and is not reflected in your annual W2 wages.

**IV.   OTHER**
The compensation described above is contingent upon meeting specific performance expectations and continuous employment through the periods specified.

If your employment as a Sales Professional ends prior to the end of Fiscal Year, for any reason, whether by you or by Lifetouch, you will be paid your Earned Commission as of your last day of employment when results are available and the commission is reasonably calculable.

The performance period for this compensation plan is Fiscal Year 2016 (July 1, 2015 – June 30, 2016). Compensation and sales expectations will be reviewed on a semi-annual basis. The company retains the right to automatically renew or to change the provisions of this agreement upon reasonable notice to you.

*This Exhibit amends only Exhibit A of the Sales Employment Agreement, which otherwise remains in full force and effect.*

By signing below, I acknowledge that:

   a.   I have read, understand and agree to the terms of this Exhibit A
   b.   I am aware that Lifetouch reserves the right to modify commission rates at any time at its sole discretion.
   c.   I agree that I will be paid advance commission and if my employment ends I authorize Lifetouch the right to recover over-payments of unearned commission paid to me by withholding all monies due to me by Lifetouch. I agree to reimburse Lifetouch in the event that any withholdings are insufficient to cover the overpayments to me through payroll deductions and any other sums owed to me by the company (including expense reports.

Employee Signature: _____   Date: 4/17/15
Manager Signature: _____   Date: 6/23/15

| | FORECAST Renewed HN Territory | FORECAST New business | SETTLEMENT |
|---|---|---|---|
| Yearbook Estimated Commission | 165,000 | 10,000 | 165,000 |
| Actual Year End: Yearbook Commission Released in Per. | | | |
| Customer Incentives | 3,000 | | 3,000 |
| Bad Debt Adjustments | | | |
| Yearbook Net Commission | 162,000 | 10,000 | 162,000 |
| Sales Pro Commission Rate | | | |
| Sales Pro Estimated Commission | $145,800 | $7,000 | 145,800 |
| Advanced Commission Rate | 85% | | |
| Sales Pro Advanced Commission | $123,930 | | 117,000 |
| # of pay periods in a year | 26 | | |
| Paid on bi-weekly check | $4,767 | | |
| Year-End Settlement to be Paid | | | 28,800 |

*Addendum to Exhibit A

# Exhibit 6

2/7/2019                                                    FedEx Ship Manager - Print Your Label(s)

**FedEx**      Shipment Receipt

**Address Information**
Ship to:                    Ship from:
Alex Wilson                 Sara Motzko
                            Lifetouch Inc.
59 High Street              11000 Viking Drive 400 West

AMESBURY, MA                Eden Prairie, MN
01913                       55344
US                          US
978-578-0639                9528264942

**Shipment Information:**
Tracking no.: 774419485180
Ship date: 02/07/2019
Estimated shipping charges: 10.37 USD

**Package Information**
Pricing option: FedEx Standard Rate
Service type: FedEx Express Saver
Package type: FedEx Envelope
Number of packages: 1
Total weight: 0.10  LBS
Declared Value: 0.00  USD
Special Services: Residential Delivery
Pickup/Drop-off: Drop off package at FedEx location

**Billing Information:**
Bill transportation to: LNSS-397
Your reference: A Wilson
P.O. no.:
Invoice no.:
Department no.:

Thank you for shipping online with FedEx ShipManager at fedex.com.

**Please Note**
FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.



**Rex L. Buxton**
**Associate General Counsel**

Tel 952.826.5645
Fax 952.221.3278
rbuxton@lifetouch.com

February 7, 2019

**VIA FEDERAL EXPRESS**

Alex Wilson
59 High Street
Amesbury, MA 01913

Dear Mr. Wilson:

This office serves as general counsel to Lifetouch National School Studios Inc. ("Lifetouch" or "Company"), your prior employer. As you know, your employment with Lifetouch ended October 16, 2017. It has come to our attention that you may be in violation of your Sales Professional Employment Agreement ("Agreement") by soliciting former accounts that you called on/serviced within your Lifetouch sales territory and assisting your current employer in obtaining such accounts.

Lifetouch hereby demands you cease and desist in all activities in violation of your Agreement. Attached for your information is a copy of the Agreement that you signed April 17, 2015.

Please respond to this letter on or before **Thursday, February 14, 2019** confirming that you will abide by the conditions of your Employment Agreement.

Lifetouch will continue to monitor your activities and to the extent that you breach your Agreement and cause damage to Lifetouch the Company will pursue all available legal remedies against you without further notice.

By copy of this letter we are providing a copy of your Agreement to your employer.

Very truly yours,

Rex Buxton

cc: Walsworth Yearbooks

M:\Department Shares\Legal Department\Employee Relations\Non-Compete\Schools (LNSS)\Wilson, Alex (Feb 2019)\2.7.19 Ltr to Wilson.doc

**LIFETOUCH NATIONAL SCHOOL STUDIOS INC.**
**SALES PROFESSIONAL EMPLOYMENT AGREEMENT**

This Sales Professional Agreement ("Agreement") is entered into between Lifetouch National School Studios Inc., a Minnesota Corporation ("Lifetouch" or "Company") and Alex Wilson ("Employee" or "you"). The effective date of this Agreement is the date of the Employee's signature. ("Effective Date").

In consideration of Employee's (1) employment with Lifetouch, (2) annual salary and/or incentive earning opportunities, (3) access to technical knowledge, specialized equipment, training and sales techniques, and (4) access to the Company's Confidential Information and Customers (as defined below), Employee agrees as follows:

1.      **Duty of Loyalty.** While an employee of Lifetouch, you are expected to perform your duties and conduct Lifetouch business in a lawful and professional manner in the best interests of Lifetouch. During employment, you will devote full working time and attention exclusively to your responsibilities as an employee and will not provide services or products of any kind or engage in any business activity that will interfere with your duty of loyalty to Lifetouch.

2.      **Compensation.** You will be paid for services as described on the attached Exhibit A, as modified from time to time.

3.      **Equipment.** Lifetouch will provide equipment and materials for you to use to perform job duties for Lifetouch. Lifetouch equipment and materials (both referred to as "Company Owned Materials") are to be used exclusively for Lifetouch business and according to Lifetouch's set up and operating procedures. All repairs, alterations and modifications to Company Owned Materials must be authorized in advance by your manager and performed only by authorized Lifetouch specialists. You understand and agree that Company Owned Materials and data, including images saved on or generated from the Company Owned Materials ("Data") are the sole and exclusive property of Lifetouch. You agree to safeguard Company Owned Materials and Data, keeping them secure from access and use by unauthorized persons, damage and theft. You are responsible for the condition of the Company Owned Materials, except for normal wear and tear, and for damages caused by any unauthorized use or loss. You agree to immediately report any loss or theft of Company Owned Materials or Data and assist in promptly filing a police report. Lifetouch will maintain an inventory of the Company Owned Materials under your control. This inventory will be conclusive and binding upon you and Lifetouch. You agree to immediately deliver to Lifetouch, upon written request, all of the Company Owned Materials provided to you.

4.      **Banking and Sales Proceeds.** All sales proceeds received by you must be immediately deposited in a Lifetouch designated bank account or forwarded to a location directed by the Lifetouch Finance Department. You will not, under any circumstances, commingle sales proceeds with personal funds, borrow from or deposit sales proceeds in an account other than a Lifetouch authorized bank account.

5.    **Authority to Bind the Company.**  You are not authorized to:  (1) sign a lease or purchase equipment or materials in the name of Lifetouch without the prior written approval of an officer of Lifetouch; and/or (2) acknowledge or accept any summons, complaint or other legal service of process on behalf of Lifetouch.  All sales contracts are subject to approval by Lifetouch.    All telephone numbers, website addresses, email addresses, domain names, fax numbers and data lines used in conducting Lifetouch business must be in Lifetouch's name and under Lifetouch's control except as otherwise permitted by the Lifetouch Electronic Communications and Systems Policy.

6.    **Protection of Confidential, Proprietary and Trade Secret Information.** For many years, Lifetouch has made significant investments to establish a successful photography business, famous brand name, and valuable customer and employee base. Lifetouch's Confidential Information (as defined below) has independent economic value to Lifetouch because it is not generally known to the public.  As a result, it is imperative to the continued success of Lifetouch that Confidential Information is protected and kept confidential.

a.    **Definition of Confidential Information.** Confidential Information ("Confidential Information") means both Proprietary Information and Personal Information.

b.    **Definition of Proprietary Information.** Lifetouch Proprietary Information ("Proprietary Information") means all nonpublic information (in tangible or intangible form) arising from, relating to or in the possession of Lifetouch including but not limited to: technical information such as trade secrets, trade secret processes or devices, know-how, technology, data, software, formulas, inventions (whether or not patentable or copyrighted), specifications and characteristics of products or services planned or being developed, and research subjects, methods and results; business information such as costs, profits, pricing, commissions, scheduling, training, policies, markets, sales, suppliers, customers, contracts, product plans, and marketing plans or strategies, financial reports and projections, production methods, techniques and volume; human resources information such as employment policies and practices, personnel, information and files, compensation and employee benefits; and other information not generally disclosed by the Company to the public.

c.    **Definition of Personal Information.** Personal Information ("Personal Information") includes any individually identifiable information provided to Lifetouch by customers, potential customers and employees and third parties in confidence, which may include but is not limited to personally identifiable information or transactional data such as credit card or bank account information.

d.    **Ownership.** Lifetouch Proprietary Information is owned by Lifetouch.

e.    **Maintain Confidentiality.** At all times during and after your employment with Lifetouch, you will maintain all Lifetouch Confidential Information in the strictest confidence and will not, directly or indirectly, disclose or make Lifetouch Confidential Information available to any unauthorized person or entity or use it for your own personal benefit. Lifetouch Confidential Information may be disclosed only to Lifetouch employees who need to know it and who have signed a confidentiality agreement. Lifetouch Confidential Information may only be used as required to carry out your employment duties

and for no other purposes whatsoever.  You agree to follow all Company safeguards and procedures to protect Lifetouch Confidential Information from unauthorized access or disclosure.

f.  **No Solicitation of Lifetouch Employees.**  During your employment with Lifetouch and for a period of eighteen (18) months following termination of your employment with Lifetouch for any reason, you will not, directly or indirectly, either as an individual for your own account or on behalf of any other person or persons, corporation, partnership or other entity: (i) encourage or solicit any employee, consultant or representative who worked for Lifetouch at any time within the last six (6) months of the date of your termination to leave Lifetouch for any reason, nor will you solicit such person's services; (ii) assist any other person or entity in such encouragement or solicitation; or, (iii) otherwise interfere with the relationship any employee, consultant or representative has with Lifetouch.

g.  **No Solicitation of Customers.**  During your employment with Lifetouch and for a period of eighteen (18) months following termination of your employment with Lifetouch for any reason, you will not: (i) solicit the business or patronage of any Customer for any Competing Business; (ii) divert, entice, or otherwise take away from Lifetouch the business or patronage of any Customer, or attempt to do so; or, (iii) solicit or induce any Customer to terminate or reduce its relationship with Lifetouch. "Customer" means any prospective, present or past customer, vendor, supplier or business partner of Lifetouch with whom you, or anyone under your direct control or supervision, had contact with as part of your job responsibilities with Lifetouch at any time during the last two (2) years of your employment with Lifetouch. "Competing Business" means the business of soliciting, marketing, merchandising, promoting, and/or providing professional daycare and pre-school, student, staff and administration, school activity, sports, leagues and associations, class reunion, prom and dance, identification cards, memory book and yearbook photography and photography-related, products or services.

h.  **No Unfair Competition.**  You agree that the unauthorized use, disclosure or sale of Lifetouch Confidential Information is unfair competition.  You also agree that unauthorized solicitation of Lifetouch employees and/or Lifetouch customers during your employment and following termination of your employment is unfair competition. You promise and agree not to engage in unfair competition with Lifetouch.

i.  **Former Employers' Confidential Information.**  You will not improperly use or disclose to any Lifetouch employee, agent or contractor any confidential or proprietary information (including the substance of any unpublished patent applications or invention disclosures) belonging to any of your former employers or any other person or entity to which you owe a duty of non-disclosure.

7.  **Return of Property.**  Upon request of Lifetouch or upon termination of your employment for any reason, you agree to promptly deliver to Lifetouch all Lifetouch Property. "Lifetouch Property" includes all property used in connection with the business of Lifetouch including but not limited to, Confidential Information, Company Owned Materials and Data, merchandise, proceeds of Lifetouch business, all business forms, calendars, stationary and materials containing

Personal and Proprietary Information, and all copies, summaries or compilations in any form including electronic, paper or other media in your possession or under your control in any location, including on personal device(s).

**8.    Remedies.** You acknowledge and agree that any breach of this Agreement by you will cause Lifetouch irreparable injury for which there is not an adequate remedy at law. Therefore, you expressly agree that Lifetouch is entitled to injunctive relief in addition to any other remedies available to it in order to prevent damages resulting from a breach of this Agreement. You agree that in the event you are found to have breached (or threatened to breach) any provision of this Agreement, you will be liable to Lifetouch for reasonable attorneys' fees and costs incurred in enforcing this Agreement.

**9.    Accounting/Return of Profits.** You acknowledge and agree that any breach of this Agreement will result in damage to Lifetouch which will be difficult to precisely ascertain. Therefore, you agree to provide Lifetouch with a monthly accounting of all sales made by you directly or indirectly in violation of this Agreement and to pay Lifetouch, on a monthly basis, all profits earned by you or your new employer in the event of a breach.

**10.    Portrait Release.** As a Lifetouch employee, you may be photographed or recorded for use in promotional and other materials. You irrevocably authorize Lifetouch, its affiliated companies, agents, assigns and licensees ("Companies") to reproduce, display, publish, distribute, transmit and otherwise use and publish your image and/or voice or other recording, both during and after your employment ends in whole, in part or in composite, with or without your name, in any media to promote the Companies' business without reservation and you release the Companies from any claims relating thereto.

**11.    Severability.** You agree that in the event any provision of this Agreement is found to be invalid, it is considered severable and will not invalidate, hinder or impair the binding nature and effect of any other paragraph or provision in the Agreement. You and Lifetouch agree that any court of competent jurisdiction may modify any unlawful provision of this Agreement in order to make the provision valid, reasonable and enforceable.

**12.    Entire Agreement and Modifications.** This Agreement and Exhibit A attached hereto expressly supersedes any previous written or oral agreements between you and Lifetouch relating to employment, but does not eliminate any outstanding indebtedness. It represents the complete understanding between you and Lifetouch and may only be modified by a written agreement signed by you and an Officer of Lifetouch. No oral waiver, amendment or modification shall be effective under any circumstances whatsoever.

**13.    Successors and Assigns.** This Agreement is binding upon and enforceable by Lifetouch and its successors and assigns. This Agreement is binding upon you, and is personal to you and may not be assigned to any other person or entity.

14.     **Governing Law and Venue.**   The validity, enforceability, construction and interpretation of this Agreement are governed by the laws of the State of Minnesota. In the event a dispute arises regarding this Agreement, the Parties will submit to the jurisdiction of the federal and state courts of the State of Minnesota. You expressly waive any objection as to jurisdiction or venue in the state and federal courts located in Minnesota.

15.     **Survival.**   The terms of paragraphs 6, 7, 8, 10, 11, 12 and 14 will survive the termination of your employment by Lifetouch for whatever reason and remain in full force and effect.

16.     **At-Will Employment.**   THIS AGREEMENT IS NOT A GUARANTEE OR PROMISE OF EMPLOYMENT FOR A DEFINITE PERIOD OF TIME, AND YOUR EMPLOYMENT WITH LIFETOUCH IS "AT-WILL" AND MAY BE TERMINATED BY EITHER PARTY AT ANY TIME, WITH OR WITHOUT CAUSE AND WITH OR WITHOUT NOTICE.

By signing this Agreement, you attest that you have carefully read and considered all provisions of this Agreement and, acknowledge that all of the obligations set forth herein are fair and reasonably required to protect Lifetouch's interests.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the date of the Employee's signature below.

LIFETOUCH NATIONAL SCHOOL STUDIOS INC.                    EMPLOYEE

By: _____        By: _____

Title: _____     Printed Name: Alex Wilson

Date: 6/20/15                        Date: 4/17/15

**EXHIBIT A**
**LIFETOUCH NATIONAL SCHOOL STUDIOS INC.**
**SALES PROFESSIONAL EMPLOYMENT AGREEMENT**
**Compensation Plan for Fiscal Year 2016**
**Alex Wilson**

**I.    DEFINITIONS**

Unless otherwise defined below, capitalized terms in this Exhibit have the same meaning as defined in the Sales Representative Employment Agreement (the "Agreement") between you and Lifetouch.

**Yearbook Gross Commissions** are calculated based on (a) yearbooks sold by you during the Fiscal Year applying the applicable publishing year's yearbook pricing tools, e.g. Volumes Yearbook Pricing Tool and State of Create Electronic Pricing Grid, and (b) commercial printing sales sold by you in excess of the price quoted from the Lifetouch commercial business group as shown on the books and records of Lifetouch.

**Yearbook Customer Incentives** are expenses not included in the Yearbook Pricing Tool or Electronic Pricing Grid that are incurred on behalf of the customer for e.g. computers, cameras, software, hardware, candid photography services, referral bonuses, workshop fees and other expenditures as shown on the books and records of Lifetouch.

**Yearbook Net Commissions** are Gross Commissions minus Customer Incentives and third party collection fees.

**Sales Professional Commission Rate** is the commission rate applied to Portrait Net Sales or Yearbook Net Commissions to calculate your compensation for program sales as established by the Company.

| | |
|---|---|
| Yearbooks from HN in 2015 | 90.00% |
| Yearbooks new 2016 and beyond | 70.00% |

**Earned Commission** is Portrait Net Sales and Yearbook Net Commission multiplied by Sales Professional Commission Rate for the accounts assigned to you. Commission is considered earned when yearbooks are delivered and the invoice has been paid in full and/or all portrait sales and services are delivered and all sales receipts have been deposited and commissions paid to the school.

If a contract or event is cancelled prior to execution, any commission previously paid to you on that particular job will be adjusted against future unearned commissions.

**Advanced Commission** is an amount paid to you in regular bi-weekly installments in advance based upon your forecasted or expected commissions for the Fiscal Year. Advanced Commission amounts are based on a percentage of forecasted or expected sales and prior fiscal year collections by you in the prior Fiscal Year. During the annual Territory budget process the amount of Advanced Commission will be established. The amount of your Advanced Commission payments may be adjusted during the Fiscal Year, depending on actual and forecasted commission. Your current Advanced Commission rate is 85%.

**Settlement is** the amount of earned commission in excess of the advanced Commission that is paid at the end of each season.

**Fiscal Year means** Lifetouch's Fiscal Year which begins on July 1 and ends on June 30.

## II. COMPENSATION

You are classified as an exempt outside sales representative and, your compensation consists entirely of Earned Commission. Lifetouch reserves the right to modify commission rate at any time at its sole discretion. Changes to commission rates will be announced in advance of the effective date. Special bonus or incentive plans may be announced by the Company from time to time as well.

As of the effective date, you will be paid Advanced Commission as outlined below, payable in 26 bi-weekly installments less applicable payroll taxes and other authorized deductions. Expected total compensation is calculated based on your target Net Commission multiplied by your Sales Professional Commission Rate.

Expected total compensation is calculated based on your target Yearbook Net Commissions multiplied by your Sales Professional Commission Rate.

|  | **Yearbook Net Commissions** |
|---|---|
| Multiplied by (X) | **Sales Professional Commission rate** |
| = | **Expected Total Commission** |
| Multiplied by (X) | **Advanced Commission Rate** |
| = | **Expected Annual Advanced Commission** |
| Divided by (/) | **26 Pay Periods** |
| = | **Bi-Weekly Advanced Commission** |

Your Year End Commission Settlement will be calculated as follows:

|  | **Gross Commissions** |
|---|---|
| Reduced by (-) | **(Customer Incentives)** |
| = | **Yearbook Net Commissions** |
| Multiplied by (X) | **Sales Professional Commission Rate** |
| = | **Earned Commission** |
| Reduced by (-) | **(Advanced Commission including Investment Commission)** |
| = | **Fiscal Year Settlement** |

Commission calculations are subject to final reconciliation by Lifetouch. You may calculate Commission status on an interim, unaudited basis from the Lifetouch reporting systems which can be reviewed with your Territory Manager.

June 30 is the end of the Company's Fiscal Year and once company information is verified and commissions are reasonably calculable, Lifetouch will reconcile Earned Commission against Advanced Commission for the completed Fiscal Year; typically by August 15th. If you are in a debit position at a commission settlement date, the excess Advanced Commission above Earned Commission must be reconciled by reducing future Commission Advances or otherwise repaid to Lifetouch upon written demand. By signing this Exhibit, you agree that if you are in a debit position and your employment

ends you authorize Lifetouch to withhold all excess advance commission paid to you from your final paycheck or any unreimbursed expense payments owed to you by Lifetouch.

In the event of any dispute, Lifetouch's reports as produced in the ordinary course of business, including without limitation the Commission Reports shall be determinative.

**III.     EXPENSES**
You will be provided with an automobile allowance in the amount of $6,500 to include toll expenses per Fiscal Year, payable in substantially equal bi-weekly installments.

You will be reimbursed for actual expenses incurred in the ordinary course of business based on company expense reimbursement policies and subject to approval by your manager.  Receipts must be in a form reasonably satisfactory to Lifetouch and in compliance with applicable requirements of tax authorities.  Expense reimbursement is not considered taxable income to you and is not reflected in your annual W2 wages.

**IV.     OTHER**
The compensation described above is contingent upon meeting specific performance expectations and continuous employment through the periods specified.

If your employment as a Sales Professional ends prior to the end of Fiscal Year, for any reason, whether by you or by Lifetouch, you will be paid your Earned Commission as of your last day of employment when results are available and the commission is reasonably calculable.

The performance period for this compensation plan is Fiscal Year 2016 (July 1, 2015 – June 30, 2016). Compensation and sales expectations will be reviewed on a semi-annual basis. The company retains the right to automatically renew or to change the provisions of this agreement upon reasonable notice to you.

*This Exhibit amends only Exhibit A of the Sales Employment Agreement, which otherwise remains in full force and effect.*

By signing below, I acknowledge that:

a.  I have read, understand and agree to the terms of this Exhibit A
b.  I am aware that Lifetouch reserves the right to modify commission rates at any time at its sole discretion.
c.  I agree that I will be paid advance commission and if my employment ends I authorize Lifetouch the right to recover over-payments of unearned commission paid to me by withholding all monies due to me by Lifetouch. I agree to reimburse Lifetouch in the event that any withholdings are insufficient to cover the overpayments to me through payroll deductions and any other sums owed to me by the company including expense reports.

Employee Signature: _____  Date: _____
Manager Signature: _____  Date: _____

|  | FORECAST Renewed HN Territory | FORECAST New business | SETTLEMENT |
|---|---|---|---|
| Yearbook Estimated Commission | 165,000 | 10,000 | |
| Actual Year End: Yearbook Commission Released in Per. | | | 165,000 |
| Customer Incentives | 3,000 | | 3,000 |
| Bad Debt Adjustments | | | |
| Yearbook Net Commission | 162,000 | 10,000 | 162,000 |
| Sales Pro Commission Rate | | | |
| Sales Pro Estimated Commission | $145,800 | $7,000 | 145,800 |
| Advanced Commission Rate | 85% | | |
| Sales Pro Advanced Commission | $123,930 | | 117,000 |
| # of pay periods in a year | 26 | | |
| Paid on bi-weekly check | $4,767 | | |
| Year-End Settlement to be Paid | | | 28,800 |

*Addendum to Exhibit A

# Exhibit 7

Risa Nitkin
64 Terrace Avenue
Hamden, CT 06517

September 30, 2019

Mr. Craig Brown
RI Territory Manager
Lifetouch / Shutterfly
1170 Pontiac Avenue
Cranston, RI 02920

Dear Craig,

*It is with heartfelt regret* that I inform you of my resignation from my position as a yearbook representative of Lifetouch / Shutterfly on October 1, 2019.

I will always be grateful for the opportunity that you afforded me and the confidence that you had in my ability to represent what Lifetouch Yearbooks offered its partners. You are an inspiring leader who represents to what length one should go to maintain the integrity of his sales team.

I do not remember ever having signed a non-compete agreement but if I did, I trust that someone will send me a copy for my records.

Sincerely,

Risa Nitkin

# Exhibit 8



**From:** Craig Brown <cbrown@lifetouch.com>
**Sent:** Monday, September 30, 2019 2:40:50 PM
**To:** Rex Buxton <rbuxton@lifetouch.com>
**Cc:** John Tyrrell <jtyrrell@lifetouch.com>
**Subject:** Fwd: Lifetouch Yearbooks

This was sent this am

Craig

---------- Forwarded message ---------
From: **RISA NITKIN** <rnitkin@lifetouch.com>

Date: Mon, Sep 30, 2019 at 11:27 AM
Subject: Lifetouch Yearbooks
To:.

I am writing to inform you of my resignation from my position as a yearbook
representative of Lifetouch / Shutterfly effective on October 11, 2019.

I have accepted a position as a yearbook specialist with Walsworth Yearbooks.
Since Lifetouch's acquisition by Shutterfly, I no longer feel the confidence that I
once had in delivering a world class product that exceeds any other company's
ability. Walsworth Yearbooks reflects the level of quality and service that schools
deserve. Their goals and visions for yearbooks complement the excellence that
customers should expect.

Due to potential contract obligations, it is unclear as to whether or not I am able
to remain in contact with you in regard to yearbooks. In the coming weeks, I will
know more about the level of involvement I can have with your yearbook.
However, I value our friendship and would like for that relationship to continue.
Since I plan to continue creating beautiful books for a long time, I am hopeful
that we can work together again in the future.

I will always be grateful for our partnership and the confidence that you had in
my ability to help create a yearbook of which your school could be proud.


Sincerely,
Risa

**Lifetouch**


**Risa Nitkin**
**Yearbook Specialist|School Photography & Yearbooks**
**Office: 203.495.9777 | Cell: 203.362.7202**

**Customer Care: 800.736.4761**

**rnitkin@lifetouch.com**

The West Warwick Public Schools does not discriminate on the basis of race, color, creed, national or ethnic origin, gender, religion, disability, sexual orientation, age (except permitted by law), disabled veteran, veteran of the Vietnam Era, marital, family or citizenship status in accordance with applicable laws and regulations. This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. Distribution and reproduction of this email, without the express consent of the author, are prohibited. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the West Warwick Public Schools. Finally, the recipient should check this email and any attachments for the presence of viruses. The District accepts no liability for any damage caused by any virus transmitted by this email.

**Lifetouch**

**Craig T. Brown**
Territory Manager | School Photography & Yearbooks
1170 Pontiac Avenue | Cranston, RI 02920
Office: 401.781.6320 ext.130 | Cell: 401.465.4005
cbrown@lifetouch.com

# Exhibit 9

**Debbie Cohen**
Seven Old Field Road
West Hartford, CT 06117

October 2, 2019

Mr. Craig T. Brown
Territory Manager
Lifetouch
1170 Pontiac Avenue
Cranston, RI 02920

Dear Craig,

It is with deep personal regret that I tender my resignation to Lifetouch. I've enjoyed growing the secondary yearbook business and truly anticipated spending the remainder of my career with Lifetouch.  Unfortunately, the transitions of the past 18 months have changed the focus of my position from sales to service at an organization that has disabled me from taking care of my accounts and fulfilling what I sold them.

My integrity and reputation are my calling card, so I no longer see Lifetouch as a fit for me.

You're a dynamic leader and I've truly enjoyed working with you. Sincere thanks for the opportunity to have been part of the RI team.

With appreciation,

Debbie Cohen

Exhibit 10

## Re: yearbook - from Debbie Cohen    Inbox x





**Howard, Kelly** via lifetouch.com                    3:25 PM (1 hour ago)     ⋮
to Debbie ▾

That's so great, Debbie. Congrats!

We are switching to Walsworth next year, so I will still see you then  :)

- Kelly

On Wed, Oct 2, 2019 at 1:34 PM Debbie Cohen <dcohen@lifetouch.com> wrote:
Hi there,

I want to tell you about a big change: **I've decided to resign from Lifetouch and have accepted a new position with Walsworth Yearbooks.** During the time we've worked together, I've taken seriously the privilege of partnering with you and your students to create excellent yearbooks. Thank you for placing your trust in me. Recent transitions have compromised my ability to deliver the high level of quality and service that you deserve, and I've been searching for an opportunity that would allow me to maintain the integrity that you expect.

Walsworth Yearbooks' technology, quality and service make this a fit for me and the type of schools and colleges with which I enjoy working. The values of a family-owned business make me proud and excited to associate with Walsworth. At Lifetouch, I signed an agreement that prevents me from reaching out to you regarding your choice of a publishing company for the next 18 months. Even though I can't discuss the yearbook, I hope you'll stay in touch because I value our friendship.

Moving forward, someone from Lifetouch Yearbooks will contact you. If you currently work with Lifetouch for your school photography, nothing changes and you should rely on the same rep. Since I plan to continue creating great yearbooks, I look forward to reconnecting in the future.

With thanks from your proud publisher,

Debbie Cohen
personal cell 860-977-0048


**Debbie Cohen**
Yearbook Specialist | School Photography & Yearbooks
**860-977-0048**
**dcohen@lifetouch.com**

# Exhibit 11



**From:** Bob Sasena <bsasena@lifetouch.com>
**Date:** October 11, 2019 at 12:26:52 PM EDT
**To:** Craig Brown <cbrown@lifetouch.com>
**Cc:** John Tyrrell <jtyrrell@lifetouch.com>, Timothy Rosa
<trosa@lifetouch.com>
**Subject: BINGO. Yearbook Choices**

Check this out. See below.  From yearbook advisor at Southwick.  Had a great
meeting there and brought this kind of action into our conversation and Bang.

---------- Forwarded message ---------
From: **Melissa Trzasko** <mtrzasko@stgrsd.org>
Date: Fri, Oct 11, 2019 at 11:58 AM
Subject: Fw: Yearbook Choices
To: Bob Sasena <bsasena@lifetouch.com>

This is the email that I received from Walsworth. Prior to the email from Debbie, I had never heard of this company or had any contact with anyone from this company.

[google.com]
*Melissa Trzasko*
**Business and Computer Science Teacher**
**Southwick Regional School**
93 Feeding Hills Road [google.com]
Southwick, MA 01077 [google.com]
**(413) 569-6171**
mtrzasko@stgrsd.org

---

**From:** Risa Nitkin <risa.nitkin@walsworth.com>
**Sent:** Wednesday, October 9, 2019 10:59 AM
**To:** Melissa Trzasko <mtrzasko@stgrsd.org>
**Subject:** Yearbook Choices

Dear Melissa,
Hi Laurie.

I represent Walsworth Yearbooks. I heard that perhaps you were exploring options for your yearbook publisher.
Would you be willing to give me the opportunity to have a conversation about your needs so that I can help alleviate the work and pressure that goes with the title of yearbook adviser? I was a teacher and yearbook adviser for many years until I went to work in publishing, so I lived, firsthand, some of what you are experiencing.

I look forward to hearing from you either way.

Thank you,
Risa

**risa.nitkin@walsworth.com**
**203.362.7202 (cell)**
**203.495.9777 (office)**

--
**Bob Sasena**
Sales Professional | School Photography & Yearbook Specialist
203-494-4099
bsasena@lifetouch.com

**Yearbook Technical Support**
**1-800-736-4762** or **1-800-736-4761**



# Exhibit 12



**From:** Bob Sasena <bsasena@lifetouch.com>
**Sent:** Friday, October 25, 2019 5:56:37 AM
**To:** Rex Buxton <rbuxton@lifetouch.com>
**Cc:** Craig Brown <cbrown@lifetouch.com>
**Subject:** Fwd: need some information -

Hi Rex,

Here's an email from that school, Bristol Eastern High School, in Bristol, CT. This is the yearbook advisor answering my question about the visitor from Walsworth.

Thanks,
Bob

**Bob Sasena**
Sales Professional | Yearbook Specialist
203-494-4099
bsasena@lifetouch.com

Questions on using the new yearbook site? Watch this Overview Tutorial [dropbox.com]

**Yearbook Technical Support**
**1-800-736-4762 or 1-800-736-4761**

**Lifetouch.**

---------- Forwarded message ---------
From: **Marc Zimmerman** <marczimmerman@bristolk12.org>

Date: Fri, Oct 25, 2019 at 4:50 AM
Subject: Re: need some information -
To: Bob Sasena <bsasena@lifetouch.com>

Bob,
I had an unexpected visit by Susan Gillam. She was turned away after showing up unannounced and asking to
see Amy. She left her card so I emailed her and told her we would not discuss anything until the end of the year,
since I thought that's when I contract ended.

Sent from my iPhone

> On Oct 24, 2019, at 10:26 PM, Bob Sasena <bsasena@lifetouch.com> wrote:
>
> Hi Marc,
>
> Can you give me the name(s) of the people of Walsworth Publishing that contacted
> you?  Was it via a stop into the school or a phone call?
>
> Thank you for your help.
>
> My best,
> Bob
>
> **Bob Sasena**
> Sales Professional | Yearbook Specialist
> 203-494-4099
> bsasena@lifetouch.com
>
> Questions on using the new yearbook site? Watch this Overview Tutorial [dropbox.com]
>
> **Yearbook Technical Support**
> **1-800-736-4762 or 1-800-736-4761**
>
> **Lifetouch.**

Exhibit 13



**From:** Bob Sasena <bsasena@lifetouch.com>
**Sent:** Monday, October 28, 2019 7:02:13 AM
**To:** Craig Brown <cbrown@lifetouch.com>; Rex Buxton <rbuxton@lifetouch.com>; Timothy Rosa <trosa@lifetouch.com>
**Subject:** Windham High School



introduce myself and ask you if you'd like to take a look at Walsworth Yearbooks. I'd love to meet sometime next week if you have a day and time that's convenient.

I look forward to hearing from you.

Thanks,
Susie

# Exhibit 14



**From:** Peter Greer <pgreer@lifetouch.com>
**Sent:** Wednesday, October 30, 2019 12:33 PM
**To:** Bob Sasena <bsasena@lifetouch.com>; Craig Brown <cbrown@lifetouch.com>; Rex Buxton <rbuxton@lifetouch.com>; Steve Luke <STLUKE@lifetouch.com>
**Subject:** (Walsworth) Fwd: Yearbook Help

Lauren the adviser states that Risa and a "man" are harassing her. Calling several times a week. The "man" who I would guess was Alex, made his way by the office and went to her classroom during class and interrupted. Is there any way to help her stop the harassment? She asked if we could intervene and make them stop? Job#12116320

---------- Forwarded message ---------
From: **Lauren Reuter** <lreuter@pvpa.org>
Date: Wed, Oct 30, 2019 at 12:54 PM
Subject: Fwd: Yearbook Help
To: Peter Greer <pgreer@lifetouch.com>

---------- Forwarded message ---------
From: **Risa Nitkin** <risa.nitkin@walsworth.com>
Date: Tue, Oct 22, 2019 at 9:08 AM
Subject: RE: Yearbook Help
To: Lauren Reuter <lreuter@pvpa.org>


Yes, I know that you are with Lifetouch. They have a new website. If you become frustrated at all, I just ask that you allow me the opportunity to show you the ways that I can make a difference in your yearbook production, Laurie.


**From:** Lauren Reuter <lreuter@pvpa.org>
**Sent:** Wednesday, October 9, 2019 10:48 AM
**To:** Risa Nitkin <risa.nitkin@walsworth.com>
**Subject:** Re: Yearbook Help


we have yearbooks through Lifetouch but thank you anyways


On Wed, Oct 9, 2019 at 10:34 AM Risa Nitkin <risa.nitkin@walsworth.com> wrote:

Hi Laurie.


I represent Walsworth Yearbooks. I heard that perhaps you were exploring options for your yearbook publisher.

Would you be willing to give me the opportunity to have a conversation about your needs so that I can help alleviate the work and pressure that goes with the title of yearbook adviser?  I was a teacher and yearbook adviser for many years until I went to work in publishing, so I lived, firsthand, some of what you are experiencing.


I look forward to hearing from you either way.


Thank you,

Risa

Sincerely,

Risa

risa.nitkin@walsworth.com

203.362.7202 (cell)

203.495.9777 (office)

--

Lauren M Reuter

she/her/hers

Costuming & Yearbook

lreuter@pvpa.org

*** NOTICE ***

All electronic messages sent from Pioneer Valley Performing Arts Charter Public School are archived in conformance with Massachusetts and federal Public Records law.

--
Lauren M Reuter
she/her/hers
Costuming & Yearbook
lreuter@pvpa.org

*** NOTICE ***
All electronic messages sent from Pioneer Valley Performing Arts Charter Public School are archived in conformance with Massachusetts and federal Public Records law.
--
Sent from Gmail Mobile

Exhibit 15



**From:** Bob Sasena <bsasena@lifetouch.com>
**Sent:** Wednesday, October 30, 2019 12:39 PM
**To:** Craig Brown <cbrown@lifetouch.com>; Rex Buxton <rbuxton@lifetouch.com>
**Subject:** Fwd: Fw: yearbook - from Debbie Cohen, Walsworth

Soliciting Fairfield Wheeler Magner School.

See below.

---------- Forwarded message ---------
From: **Bromberg-Alvarado, Jessica** <jBrombergAlvarado@bridgeportedu.net>
Date: Wed, Oct 30, 2019 at 12:58 PM
Subject: Fw: yearbook - from Debbie Cohen, Walsworth
To: Bob Sasena <bsasena@lifetouch.com>

*Mrs. Jessica Bromberg-Alvarado, M.S.*

*English Teacher*

*Aerospace/Hydrospace Engineering and Physical Sciences*

*Website:* http://mrsalvaradoenglish.weebly.com/ [mrsalvaradoenglish.weebly.com]

*Edmodo:* http://edmodo.com/alvaradoenglish [edmodo.com]

**From:** Debbie Cohen <debbie.cohen@walsworth.com>
**Sent:** Tuesday, October 15, 2019 8:46 PM
**To:** Bromberg-Alvarado, Jessica
**Subject:** yearbook - from Debbie Cohen, Walsworth

Hi Jessica,

Sorry to have missed you when I stopped by school today with yearbook information. I hope your field trip was as nice as the weather! Did you receive the flyer I left for you?

It's never optimal to drop in without an appointment, so I wonder whether we could meet soon to discuss options for your 2021 yearbook?

Walsworth offers a fantastic website and overall excellent yearbook creation experience. I think you'll be impressed with the site and resources, as well as our top-quality printed yearbooks. Might there be a convenient time for us to meet? Thanks for being in touch.

With appreciation,

Debbie

Debbie Cohen

debbie.cohen@walsworth.com

860-977-0048

--
**Bob Sasena**
Sales Professional | Yearbook Specialist
203-494-4099
bsasena@lifetouch.com

Questions on using the new yearbook site? Watch this Overview Tutorial [dropbox.com]

**Yearbook Technical Support**
**1-800-736-4762 or 1-800-736-4761**

# Lifetouch.